ESTATE OF CAROLINE MCCULLOCH SPENCER, DECEASED, JOHN
MITCHELL SPENCER AND JOHNSON WEST, EXECUTORS, PETITIONER,
*v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 2254. Promulgated October 12, 1945.

*Johnson West, Esq.*, and *Robert S. Miller, Esq.*, for the petitioner.
*John H. Pigg, Esq.*, for the respondent.

OPINION.

LEECH, *Judge*: The issue presented is the fair market value of 3,100 shares of class A capital stock of the Hobart Manufacturing Co. on October 1, 1940, for Federal estate tax purposes. The stock was reported for those purposes at a value of $35 per share. This value was increased by the respondent to $50. Since 1926 the shares of that corporation have been listed only on the Cincinnati Stock Exchange.

Petitioner relies heavily on the regulations promulgated by the Treasury as to the valuation of stocks and bonds listed on a stock exchange.[1] Those regulations provide in substance that where stock is listed on a stock exchange, the mean between the highest and lowest selling prices on the valuation date shall be considered as the fair

---

[1] SEC. 81.10 [Regulations 105] *Valuation of Property.*— (a) *General.*—The value of every item of property includible in the gross estate is the fair market value thereof at the time of the decedent's death : * * * The fair market value is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell. * * * Such value is to be determined by ascertaining as a basis the fair market value as of the applicable valuation date of each unit of the property. For example, in the case of shares of stock or bonds, such unit of property is a share or a bond. All relevant facts and elements of value as of the applicable valuation date should be considered in every case.

* * * * * * *

(c) *Stocks and bonds.*—The value of stocks and bonds, within the meaning of the Internal Revenue Code, is the fair market value per share or bond on the applicable valuation date.

In the case of stocks and bonds listed on a stock exchange the mean between the highest and lowest quoted selling prices on the valuation date shall be considered as the fair market value per share or bond. If there were no sales on the valuation date, such value shall be determined by taking the mean between the highest and lowest sales on the nearest date before and the nearest date after the valuation date (both such nearest dates being within a reasonable period), and by prorating the difference between such mean prices to the valuation date, and by adding or subtracting, as the case may be, such prorated portion of the difference to or from the mean price obtaining on such nearest date before the valuation date. * * *

* * * * * * *

If actual sale prices or quoted bona fide bid and asked prices are available on a date within a reasonable period prior to the valuation date, but if no actual sale prices or bona fide bid and asked prices are available on a date within a reasonable period after the valuation date, or vice versa, then the mean between such highest and lowest available sale prices or bid and asked prices may be taken as the value.

* * * * * * *

In cases in which it is established that the value per bond or share of any security determined on the basis of selling or bid and asked prices as herein provided does not reflect the fair market value thereof, then some reasonable modification of such basis or other relevant facts and elements of value shall be considered in determining fair market value.

market value per share. The respondent, however, stresses another provision of the same regulations providing, in effect, that, where the selling or bid and asked prices do not reflect the fair market value, then some reasonable modification of such basis or other relevant facts and elements of value shall be considered in determining fair market value. The practical definition of fair market value that has been repeatedly applied in cases coming before the courts is that now contained in the same regulation that "The fair market value is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell." The respondent argues that his determination enjoys the presumption of correctness and that petitioner has failed to sustain its burden of showing the fair market value to be other than that determined by him. Petitioner counters with the argument that where the respondent refuses to accept the selling price established on a regular stock exchange, he has the burden of showing the other relevant facts and elements of value. Since the evidence adduced is sufficiently ample to enable us to determine the question of fact involved, we think it is unnecessary to pass upon these conflicting positions.

The parties have stipulated that we may take judicial notice of all the evidence, both oral and documentary, introduced in a proceeding before this Court in the case of the *Estate of Herbert L. Johnston*, Docket No. 110075. In a memorandum opinion entered June 22, 1943, we determined the value of 7,564 shares of class A stock of the Hobart Manufacturing Co. to be $36 per share as of January 21, 1938. We have examined the record in that case and find it helpful in some aspects of our present problem. Since our task is to determine the value of certain shares on a given date 2 years and 10 months later than the critical date involved there, the finding of fact as to the value of class A shares in that case is not decisive in the instant proceeding.

The evidence here consists of the stock market record of the class A shares, the volume of actual sales on the exchange, the over-the-ccunter transactions, the company balance sheets, the income statements and the dividends paid of the Hobart Manufacturing Co. for a period of several years. Expert testimony was presented to the effect that the Cincinnati Stock Exchange was a free market, that the prices at which the shares sold and the bid and asked prices truly reflected the fair market value of the shares of the Hobart Manufacturing Co. on the respective dates. No evidence was presented showing the existence of facts and elements of value which were unknown to respective buyers and sellers. The evidence here further discloses that while the Cincinnati Stock Exchange is not an active market, the annual volume of sales of class A shares averaged 6.38

percent of the total outstanding shares and that this percentage compares favorably to 6.9 percent average of 23 comparable industrial companies whose shares are listed on the New York Stock Exchange. The volume of sales and the consistency of the market price trend over the several years indicate the sales upon the Cincinnati Stock Exchange were predicated upon fair market value of the class A shares of the Hobart Manufacturing Co. The prices at which shares of stock are actually traded on an open public market on the pertinent date have been held generally to be the best evidence of the fair market value on that date, in the absence of exceptional circumstances. *John J. Newberry*, 39 B. T. A. 1123; *Frank J. Kier et al., Executors*, 28 B. T. A. 633; *Estate of Leonard B. McKitterick*, 42 B. T. A. 130. Giving due consideration to all the evidence disclosed by this record, we conclude that the value of the class A shares of the Hobart Manufacturing Co. on October 1, 1940, was $35 per share, and we so find as a fact. Petitioner is sustained on the issue of value.

*Decision will be entered under Rule 50.*