ESTATE OF HATTIE L. McNARY, DECEASED, STACEY L. McNARY, EX-
ECUTOR, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE,
RESPONDENT

Docket No. 511–65.   Filed February 6, 1967.

*E. Donald DeMuth*, for the petitioner.
*Gordon B. Cutler*, for the respondent.

WITHEY, *Judge:* A deficiency has been determined by the Commis-
sioner in the estate tax of the Estate of Hattie L. McNary in the
amount of $1,798.45.

The issues to be decided are (1) whether respondent has erred in
valuing securities in the estate which were traded on the over-the-
counter market on the basis of the average of the means of the quoted
bona fide bid and ask prices and (2) whether the value of such stocks
selling ex-dividend on the valuation date was properly increased by
the amount of the respective dividends pertaining thereto.   Other
issues which have been settled by the parties will be given effect under
Rule 50.

FINDINGS OF FACT

All stipulated facts are found as stipulated.

Petitioner is Stacey L. McNary, executor of the Estate of Hattie L.
McNary, deceased, under letters testamentary granted on June 1, 1962,
by the Probate Court of Lucas County, Ohio.   Decedent died testate
on Sunday, May 27, 1962, at which time she was a resident of Toledo,
Ohio.   Petitioner filed a Federal estate tax return for the estate on
October 16, 1962, with the district director of internal revenue, Cleve-
land, Ohio.

The value of all property included in the gross estate on the estate
tax return was determined as of the aforesaid date of death, May 27,
1962.

The estate tax return included in the gross estate (in Schedules B
and G) the following securities which in 1962 were traded as follows:

| Security | Number of shares | Traded (L or O/C)[1] |
|---|---|---|
| Ohio Turnpike bond $10,000—3¼ percent | 1 | O/C |
| Cincinnati Gas & Electric | 225 | L |
| Chase (First) Manhattan Bank | 100 | O/C |
| C. & O. Railroad (com.) | 100 | L |
| General Motors | 100 | L |
| Manufacturers Hanover Bank | 333 | O/C |
| Mississippi River Fuel | 280 | L |
| Puget Sound Power & Light Co | 200 | L |
| United Utilities (com.) | 420 | O/C |
| Utah Power & Light | 200 | L |
| Valley Mould & Iron (com.) | 500 | O/C |
| Bank of America (com.) | 300 | O/C |

[1] L (listed); O/C (over-the-counter).

These listed securities had the following total fair market values as of May 27, 1962, without consideration of any dividends:

| Security | Total fair market value |
|---|---|
| Cincinnati Gas & Electric | $9,618.75 |
| C. & O. Railroad (com.) | 4,984.38 |
| General Motors | 4,990.63 |
| Mississippi River Fuel | 10,272.50 |
| Puget Sound Power & Light Co | 7,275.00 |
| Utah Power & Light | 6,993.75 |

Sunday, May 27, 1962, was a nontrading day for the securities market. The nearest trading days for that market were Friday and Monday, May 25 and 28, 1962, respectively.

The quoted per-share bid and asked prices of the over-the-counter securities on May 25 and 28, 1962, as published in the Wall Street Journal on those 2 days, are as follows:

| Security | May 25, 1962 Bid | May 25, 1962 Asked | May 28, 1962 Bid | May 28, 1962 Asked |
|---|---|---|---|---|
| Ohio Turnpike bond | $97.00 | $99.50 | $96.75 | $99.25 |
| Chase (First) Manhattan Bank | 71.50 | 75.75 | 67.50 | 72.00 |
| Manufacturers Hanover Bank | 47.00 | 50.875 | 45.50 | 49.25 |
| United Utilities | 25.50 | 27.25 | 24.25 | 28.25 |
| Valley Mould & Iron | 39.50 | 42.50 | 39.00 | 42.50 |
| Bank of America | 50.50 | 53.75 | 47.50 | 50.875 |

Respondent determined the value as of May 27, 1962, of each of the over-the-counter securities in accordance with the provisions of section 20.2031–2(c), Estate Tax Regs., 1954 Code, namely, by the average of the means between the quoted bid and asked prices of the respective securities on May 25 and May 28, 1962.

The published securities quotations do not represent actual transactions, but ranges within which buy and sell transactions may occur.

A securities exchange market is an auction market; whereas the securities over-the-counter market is a negotiated market, wherein professional buyers and sellers seek each other out and negotiate prices

on the most favorable basis that can be achieved. In the latter market, a buyer and seller are free to negotiate or to bargain with one or several dealers who have the stock for sale regarding the price at which the transaction will occur.

Dividends on three of the aforestated stocks were declared and were payable as follows:

| Stock | Dividend per share | Date declared | Date of record | Date payable |
|---|---|---|---|---|
| General Motors | $0.50 | 5- 7-62 | 5- 9-62 | 6- 9-62 |
| Valley Mould & Iron | .75 | 4-19-62 | 5-15-62 | 6- 1-62 |
| Bank of America | .50 | 4-19-62 | 5- 5-62 | 5-31-62 |

The above three stocks were selling ex-dividend prior to May 25, 1962. The total fair market value of the General Motors stock and the respective bid and asked prices of the Valley Mould & Iron and Bank of America stocks set forth above are ex-dividend values and prices.

### ULTIMATE FINDINGS OF FACT

The fair market value per share or bond (ex-dividend, where applicable) of each of the over-the-counter securities included in the gross estate was the average of the means between the quoted bid and asked prices of the respective security on May 25 and 28, 1962, as above set forth.

The values of the three stocks involved which were selling ex-dividend on May 27, 1962, must be adjusted to reflect the additional value of the respective dividends in determining their fair market values for estate tax purposes.

### OPINION

Without the citation of any authority petitioner takes the position herein that the only proper criterion for determining the fair market value of the securities included in the assets of this estate, the values of which were, on the valuation date, quoted on the over-the-counter market, is the quoted bid price, and that respondent's computation using the average of the means of bid and ask prices as provided in section 20.2031–2(c), Estate Tax Regs.,[1] is in error and results in a

---

[1] Sec. 20.2031–2  Valuation of stocks and bonds. * * *

(c) *Based on bid and asked prices.*  If the provisions of paragraph (b) of this section are inapplicable because actual sales are not available during a reasonable period beginning before and ending after the valuation date, the fair market value may be determined by taking the mean between the bona fide bid and asked prices on the valuation date, or if none, by taking a weighted average of the means between the bona fide bid and asked prices on the nearest trading date before and the nearest trading date after the valuation date, if both such nearest dates are within a reasonable period.  The average is to be determined in the manner described in paragraph (b) of this section.

[Cf. sec. 20.2031–2(b).  *Based on selling prices.*  If there is a market for stocks or bonds, on a stock exchange, in an over-the-counter market, or otherwise, the mean between the highest and lowest quoted selling prices on the valuation date is the fair market value per share or bond.  If there were no sales on the valuation date, but there were sales on dates within a reasonable period both before and after the valuation date, the fair market value is determined by taking a weighted average of the means between the highest and lowest sales on the nearest date before and the nearest date after the valuation date. * * *]

higher valuation than is required by section 2031(a), I.R.C. 1954.[2] On brief, petitioner relies entirely upon the testimony of the son of its counsel to the effect that on the valuation date had petitioner sold the securities in question, being the seller, only the bid price would have been realized. We think petitioner's premise is faulty.

The valuation required by section 2031(a) of the Code is fair market value. *Estate of Caroline McCulloch Spencer*, 5 T.C. 904. Fair market value is that price at which property changes hands between a willing seller *and a willing buyer*, both being properly informed and neither being under compulsion to either buy or sell. Such evidence as appears here indicates, we think truthfully, that in over-the-counter trade of securities such prices are reached by negotiation between buyer and seller with the logical result that sales (which are usually the best measure of fair market value) occur within the range of the bid and ask prices. Respondent's regulation, quoted in the margin, is of long standing and represents a measure of stability in this area of litigation and we are directed to no authority and are given no convincing reason here to overrule the regulation. We hold that respondent's method of valuation on the facts shown by this record is correct.

Also, without the citation of any authority, petitioner takes the position that, because the estate must include in taxable income the dividends declared before the death of decedent and paid subsequent thereto, it follows that the value of the securities pertaining to such dividends should not be increased in accordance therewith. Petitioner argues that this is so because otherwise double taxation results.

Section 2031(a) lays a tax upon the value of all property transferred or to be transferred to the beneficiaries of an estate including the right to receive dividends to be paid the estate subsequent to the death of a decedent. *Estate of George McNaught Lockie*, 21 T.C. 64. That Congress was aware of the fact that inclusion of such a right in the taxable assets of an estate for estate tax purposes and also to include the dividends themselves in the taxable income of the estate would result in the taxing, in effect, of the same property for two different purposes is evident from its enactment of section 691(c)[3] of the 1954 Code. That section provides for a deduction from gross income in

---

[2] SEC. 2031. DEFINITION OF GROSS ESTATE.

(a) GENERAL.—The value of the gross estate of the decedent shall be determined by including to the extent provided for in this part, the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, * * *

[3] SEC. 691. RECIPIENTS OF INCOME IN RESPECT OF DECEDENTS.

(c) DEDUCTION FOR ESTATE TAX.—

(1) ALLOWANCE OF DEDUCTION.—

(A) GENERAL RULE.—A person who includes an amount in gross income under subsection (a) shall be allowed, for the same taxable year, as a deduction an amount which bears the same ratio to the estate tax attributable to the net value for estate tax purposes of all the items described in subsection (a)(1) as the value for estate tax purposes of the items of gross income or portions thereof in respect of which such person included the amount in gross income (or the amount included in the gross

such a situation equal to the amount of the estate tax which is attributable to the increase in value of securities brought about by the dividend being declared prior to decedent's death but payable subsequent thereto. Respondent's regulation, section 20.2033–1(b), requires the inclusion in the gross estate of the amount of such dividends even though unpaid at the valuation date or, in the alternative, section 20.2031–2(i) requires an increase in the ex-dividend value of securities to reflect the right in the estate to receive such dividends. We see no reason and our attention is not called to any which would convince us that respondent's cited regulations are invalid, and we therefore, sustain respondent's position on this issue.

*Decision will be entered under Rule 50.*

income, whichever is lower) bears to the value for estate tax purposes of all the items described in subsection (a)(1).

(B) ESTATES AND TRUSTS.—In the case of an estate or trust, the amount allowed as a deduction under subparagraph (A) shall be computed by excluding from the gross income of the estate or trust the portion (if any) of the items described in subsection (a)(1) which is properly paid, credited, or to be distributed to the beneficiaries during the taxable year. This subparagraph shall apply to the same taxable years, and to the same extent, as is provided in section 683.

(2) METHOD OF COMPUTING DEDUCTION.—For purposes of paragraph (1)—

(A) The term "estate tax" means the tax imposed on the estate of the decedent or any prior decedent under section 2001 or 2101, reduced by the credits against such tax.

(B) The net value for estate tax purposes of all the items described in subsection (a)(1) shall be the excess of the value for estate tax purposes of all the items described in subsection (a)(1) over the deductions from the gross estate in respect of claims which represent the deductions and credit described in subsection (b). Such net value shall be determined with regard to the provisions of section 421(d)(6)(B), relating to the deduction for estate tax with respect to restricted stock options.

(C) The estate tax attributable to such net value shall be an amount equal to the excess of the estate tax over the estate tax computed without including in the gross estate such net value.