**ESTATE OF Saida G. SELBY, Deceased, and Estate of Myron C. Selby, Deceased, Victor M. Selby, Personal Representative, Plaintiff-Appellee,**

v.

**UNITED STATES of America, Defendant-Appellant.**

**No. 80–2115.**

United States Court of Appeals, Tenth Circuit.

Jan. 30, 1984.

Rehearing Denied April 11, 1984.

George V. Fewson of Joyner & Fewson, Boulder, Colo. (Dawson L. Joyner of Joyner & Fewson, Boulder, Colo., with him on the brief), for plaintiff-appellee.

Jay W. Miller, Washington, D.C. (John F. Murray, Acting Asst. Atty. Gen., Michael L. Paup, Robert A. Bernstein, Attys., Tax Div., Dept. of Justice, Washington, D.C., with him on the briefs), for defendant-appellant.

Before SETH, Chief Judge, HOLLOWAY and BARRETT, Circuit Judges.

*Opinion on Remand*

BARRETT, Circuit Judge.

This is an appeal by the United States from a judgment entered against it for a refund of federal estate taxes in the amount of $28,841.59. The facts are complicated and lengthy; we will, therefore, repeat them only to the extent that they bear upon the legal issues necessary for disposition.

Myron C. Selby and Saida G. Selby were married in 1930 and had two children, Victor and Joy. Saida died on July 5, 1976, and, pursuant to her will, all of her property passed to her husband, Myron, if he survived her by thirty (30) days. Myron did survive his wife by thirty days and was subsequently appointed personal representative of her estate on August 10, 1976, by the District Probate Court of Boulder County, Colorado.

Myron, however, died unexpectedly on December 17, 1976. His son, Victor, was then appointed as personal representative of Myron's estate and as successor personal representative of Saida's estate. On March 15, 1977, a federal estate tax return was filed on behalf of Saida's estate, which reflected that her entire estate had passed to Myron. On account of the federal estate tax marital deduction and estate tax exemption, no federal estate tax was shown as due on Saida's return. Later, on June 16, 1977, a tax return was filed for Myron's estate. Because Myron's estate included the assets from Saida's estate, the net tax payable on Myron's estate amounted to $36,693.77. This amount was paid to the United States.

Later, on December 19, 1977, Victor, as personal representative of Myron's estate, petitioned the probate court for an "Order of Disclaimer," renouncing on behalf of Myron's estate all rights and interests which it possessed in Saida's estate under her will. Significantly, the petition was untimely because it was made well beyond the time limitation prescribed under Colorado law. It was undisputed that the disclaimer would not affect who ultimately took the property, and was made solely to reduce the feder-

al estate tax imposed on the combined estates. (Stipulation of the Parties, Record at 10 and 12). On January 11, 1978, the probate court approved Myron's disclaimer pursuant to Colo.Rev.Stat. § 15–11–801 (1973), citing "extraordinary circumstances" and a desire "to preserve the equitable treatment of all beneficiaries involved." (Record at 85). The court then ordered Saida's estate to "be reopened to allow the receipt of property previously distributed in error to the Estate of Myron C. Selby." (Pl.Ex. 100).

After filing amended estate tax returns which reflected the new disposition of Saida's assets, Myron's estate filed a formal claim for refund with the District Director of Internal Revenue for Denver, Colorado. The Director denied this claim, whereupon Myron's estate instituted the current refund suit in federal district court. The court concluded that in the absence of contravening authority, and in deference to the courts of the State of Colorado, it was obliged to uphold the action of the probate court. Therefore, the court entered judgment against the United States in the amount of $28,841.59.

On appeal, after an initial review of the proceedings, we partially remanded the action to the district court in order that it might receive additional evidence on the validity of Myron's estate disclaimer. Specifically, we were concerned with the application of Colo.Rev.Stat. § 15–11–801(4) (1973) which reads in pertinent part:

> any acceptance of property by an heir, devisee, person succeeding to a renounced interest, beneficiary, or person designated to take pursuant to a power of appointment exercised by testamentary instrument, or sale or other disposition of property pursuant to judicial process, made before the expiration of the period in which he is permitted to renounce, *bars the right to renounce as to the property.*

Hence, we wished to determine whether Myron Selby or his estate had accepted the

assets of Saida's estate, thereby foreclosing the right of his estate to renounce the property under Colorado law.

## I.

The federal district court, in approving the Colorado probate court's actions, registered its desire to maintain proper federal-state comity. Thus, when discussing on remand the probate court's grant of the disclaimer, the district court assumed "that the [probate] judge knew the law of Colorado when he signed the order, and the law of Colorado that he then knew would have to include the statute that we have been directed to consider here." (Tr.Sup. Vol. I, p. 16). Clearly, the district court thought it proper to defer to the state court's interpretation of Colorado statutes relating to disclaimers.

We understand and appreciate the district court's concern. Such concern, however, does not permit the federal courts to defer entirely without review. The problem of what effect must be given a state court decree where the matter decided there is determinative of federal estate tax consequences has long burdened the Bar and the courts. *Commissioner v. Estate of Bosch,* 387 U.S. 456, 462, 87 S.Ct. 1776, 1781, 18 L.Ed.2d 886 (1966). In *Bosch, supra,* the Supreme Court attempted to shed light on this area by analyzing the competing federal and state interests involved in these type of disputes. We note that the Court's conclusion, in a general sense, recognized a federal power of review in this realm that was broader than in areas not having federal tax consequences.[1]

Specifically, *Bosch* involved the validity under state law of a release of a general power of appointment. The ultimate outcome of the controversy—the amount of federal estate tax owed—hinged on whether the release was invalid under state law and thus qualified the trust in issue for the federal marital deduction. Thus, *Bosch* presented on review a question very similar

---

1. *See also* Note, *The Estate Tax Deduction for Administration Expenses: Reformulating Complementary Roles for Federal and State Law* Under *I.R.C. § 2053(a)(2),* 67 Cornell L.Rev. 981, 985–88 (1982).

to the present one: What weight should be given a state court's determination of an issue of state law when that decision affects the federal fisc.

In the opinion written by Mr. Justice Clark, the Court noted several factors bearing upon this question. First, the Court thought it significant that the Tax Commissioner was not made a party to the state proceedings on the release issue. Thus, the state proceeding could not have the effect of *res judicata;* nor could the principle of *collateral estoppel* apply. 387 U.S. at 463, 87 S.Ct. at 1781–1782. Second, the Court noted that the state proceedings were brought for the purpose of directly effecting federal estate tax liability. *Id.* Third, the Court cited legislative history connected with the enactment of the marital deduction which indicated that Congress did not intend state court determinations effecting the applicability of the deduction to be "conclusive" or "final." *Id.* at 464, 87 S.Ct. at 1782. Finally, the Court noted that the state determination was not made by the highest state court and, thus, could not be viewed as the "law of the state" as envisioned by *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). *Id.* 387 U.S. at 464–65, 87 S.Ct. at 1782. The *Bosch* Court concluded:

> It follows here then, that when the application of a federal statute is involved, the decision of a state trial court as to an underlying issue of state law should a fortiori not be controlling . . . . If there be no decision by [the highest state court] then *federal authorities must apply what they find to be the state law after giving "proper regard" to relevant rulings of other courts of the State.* In this respect, it may be said to be, in effect, sitting as a state court, *Bernhardt v. Polygraphic Co.,* 350 U.S. 198 [76 S.Ct. 273, 100 L.Ed. 199] (1956).

387 U.S. at 465, 87 S.Ct. at 1782–1783 (emphasis added).

We find that the Supreme Court's rationale in *Bosch* is directly relevant to the present case. Here, the probate court proceeding was ex parte in nature, was in-

voked to effect federal estate tax liability, and was concerned, in part, with an application of the marital deduction. More important, the probate court's determination could not be viewed as expressing the law of the state as expressed in *Erie, supra.* Thus, in accordance with *Bosch,* we must review the district court's decision in order to determine whether the regard it gave to the state proceeding was "proper," and whether it applied the correct state law.

## II.

■ On remand, the district court indicated its view that the assets of Saida's estate had indeed been "accepted" by Myron's estate through the personal representative, Victor Selby. The court was aware that Victor Selby had closed the administration of Saida's estate approximately five months before he subsequently filed the petition for disclaimer. Under Colorado law, a personal representative may close an estate only by filing a verified statement providing "that the assets of the estate have been distributed to the persons entitled." Colo.Rev.Stat. § 15–12–1003(1)(a) (1973). Hence, the district court essentially inferred that "acceptance" had occurred by virtue of Victor Selby's filed statement that the assets of Saida's estate had been "distributed" to Myron's estate.

Because Myron Selby died approximately five and one-half months after Saida's death and before Saida's estate was closed, it is unclear whether Myron *personally* received and accepted the assets of Saida's estate. There is certainly evidence in the record suggesting that he did. The Selbys jointly owned their home, various personal property, a bank account, and various certificates. After Saida's death, these assets passed to Myron through survivorship; he continued to live in their home. Saida's other assets, primarily three substantial bank accounts, passed to Myron pursuant to her will. According to the Selbys' attorney, Marshall Sclarow, the Selbys expressly refused his advice to include a marital deduction trust and a residuary trust in each will so that only property qualifying for the

Federal estate tax marital deduction would pass to the surviving spouse, with the remainder to pass to the couple's children through the residuary trust. (Stipulation of the Parties, Original Record at 11). Both Myron and Saida expressly stated to him that they wished all of the property to go to the surviving spouse. *Id.* In addition, according to Sclarow, after Saida died Myron had no intention of renouncing his rights and interest in her estate. *Id.*

Although we have found no Colorado law directly on point, it is well settled in most jurisdictions that where a devise or bequest is beneficial or favorable to the devisee or legatee, his acceptance thereof is *presumed*, in the absence of evidence to the contrary. Annot., 93 A.L.R.2d 1, 23 (1964). In addition, several jurisdictions have held that where a beneficiary under a will died after the testator without expressly accepting or renouncing his devise or bequest, he is *presumed* to have accepted the gift. *Id.* at 25. On appeal, Victor Selby has presented no evidence suggesting that Myron Selby did not accept the assets of Saida's estate, except to assert that Myron did not "personally use" the assets. Selby, however, cites no authority suggesting that personal use is required to show acceptance, or that, conversely, a lack of personal use should rebut a presumption of acceptance. Significantly, Victor Selby makes no suggestion as to who, if not Myron Selby, owned or possessed the assets of Saida's estate in the five and one-half months after her death.

If for some reason Myron Selby did not, in fact, accept the assets of Saida's estate, then certainly Victor Selby did. As we have previously observed, this is the view the district court took of the situation. The court noted that when Victor Selby, acting as personal representative, closed Saida's estate on July 5, 1977, (approximately seven months after Myron's death) he was required by Colorado law to file a verified statement providing "that the assets of the estate have been distributed to the persons entitled." · Colo.Rev.Stat. § 15–12–1003(1)(a) (1973). Hence, the district court

essentially inferred that "acceptance" had occurred by virtue of the "distribution" of Saida's assets.

One final comment is important on the acceptance issue. On June 9, 1977, Victor Selby, as personal representative for *Myron Selby's* estate, signed Myron's federal estate tax return. That return included the assets from Saida's estate. We note that Myron's return reflected certain changes in the bank accounts which had passed to him through Saida's will. One account, for instance, contained $8,799.89 less than the amount reflected on Saida's estate tax return. Other accounts were apparently moved around or placed in certificates of deposit. It is not clear from the record who made all of these changes—Myron Selby or Victor Selby as his personal representative. These changes, however, again strongly indicate that Saida's assets had indeed been "accepted" by either Myron or his estate.

### III.

The district court thought it important that Saida's assets were accepted by Victor Selby acting as personal representative for Myron Selby's estate. Even if the district court were correct in concluding that Victor, and not Myron, accepted Saida's assets, we find no basis in Colorado law supporting the court's conclusion that Victor's acceptance as a personal representative could be "set aside." Again, Colo.Rev.Stat. § 15–11–801(4) indicates that an acceptance bars the right to renounce. It is true that the statute does not expressly include "personal representatives" in the class of persons to whom it refers, but to exclude such persons from the statute's coverage would create anomalous results. For instance, such a reading would not preclude *acceptance* of an estate by a personal representative, but would only prevent such an acceptance from barring a subsequent *renunciation*. In essence, then, such a reading would grant the personal representative greater power than that possessed by the heir, whose acceptance bars a renunciation.[2]

---

2. This result would seemingly violate Colo.Rev. Stat. § 15–12–711 (1973), which provides that

There is no support for this result in Colorado law,[3] and, indeed, the district court apparently did not rely upon such a reading of the statute in reaching its result.

Rather, the district court noted that personal representatives, as agents of the court, are "under the control of the Court." Consequently, according to the court, if the personal representative takes erroneous actions, then those actions can be "set aside" by the probate court. Using this rationale, the probate court "set aside" Victor Selby's acceptance after finding that the assets of Saida's estate had been "erroneously distributed" to Myron's estate. We find no support for this conclusion in fact or in the law of Colorado.

First, we must disagree that the assets of Saida's estate were "distributed in error" to Myron or his estate. The parties stipulated that the *only* reason behind Victor Selby's renunciation of Saida's estate was a desire to decrease federal estate taxes. There is no suggestion in the record that Myron Selby was not entitled to Saida's assets; indeed, the assets were distributed to him in accordance with Saida's will. All was as it should be. There was no *error* in distribution. Rather, the distribution was merely *unwise* from an estate tax viewpoint.

We have reviewed Colorado law. We have found no authority for reopening a closed estate merely to reduce the amount of federal estate tax. In *Williams v. Hankins,* the Colorado Supreme Court held that "a court of probate may at any time, in furtherance of justice, revoke its orders and reopen proceedings with respect to the settlement of estates ... *which have been irregularly made and procured by fraud or mistake.*" 82 Colo. 251, 258, 258 P. 1114, 1116 (1927) (cites omitted) (emphasis added). This holding has been followed on several occasions by the Colorado Court of Appeals. *See Hamilton v. Egan,* 633 P.2d 1100, 1101 (Colo.Ct.App.1981); *Matter of Estate of Lembach,* 622 P.2d 606, 607 (Colo. Ct.App.1980); *Matter of Estate of Fehling,* 528 P.2d 407, 409 (Colo.Ct.App.1974).

The instant case does not involve fraud, or the type of mistake recognized in the Colorado cases. Although reopening Saida Selby's estate to receive the previously distributed assets would decrease the amount of federal estate tax due, it is evident that such a savings does not necessarily serve the ends of justice, even though it does serve the ends of the taxpayer's pocketbook. To countenance the reopening of estates on this basis, or other such self-serving purposes, would diminish the finality intended by estate closing procedures and place new burdens on those responsible for assessing and collecting federal estate taxes.

In conclusion, we hold that the district court erred in upholding the actions of the Colorado Probate Court. We hold that the assets of Saida Selby's estate were accepted by either her husband Myron, or by Myron's estate through Victor Selby. By virtue of this acceptance, renunciation of the estate was barred by Colo.Rev.Stat. § 15–11–801(4). Hence, there was no justification in law for the probate court's grant of the Order of Disclaimer and the reopening of Saida Selby's estate to receive the previously distributed assets. Having so held, we must reverse the district court's judgment against the United States for the refund of federal estate taxes.

REVERSED.

---

personal representatives have the *same* power over the property of an estate that an absolute owner would have.

**3.** Victor Selby was acting as personal representative of *Myron's estate* when he renounced interest in Saida's assets. We note that Colorado's renunciation statute does not expressly include *personal representatives of estates* in the class of persons entitled to renounce. *See*

Colo.Rev.Stat. § 15–11–801(1) (1973). Still, the Colorado Probate Court allowed Victor Selby to renounce, indicating that it did not deem exclusive the Colorado statute's list of persons entitled to renounce. It would seem that a similarly expansive reading should be given to the rest of the statute, including section 15–11–801(4).