ESTATE OF R. JACK SIMPSON, DECEASED, KENNETH A. WHITTAKER, PERSONAL REPRESENTATIVE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Simpson v. Commissioner
Docket No. 4397-92
United States Tax Court
T.C. Memo 1994-259; 1994 Tax Ct. Memo LEXIS 261; 67 T.C.M. (CCH) 3062; June 7, 1994, Filed *261 For petitioner: David M. Presnick and Richard O. Jones. For respondent: Jane T. Dickinson. CLAPP
CLAPP
MEMORANDUM FINDINGS OF FACT AND OPINION CLAPP, Judge: Respondent determined a deficiency in petitioner's estate tax in the amount of $ 536,140 and an addition to tax under section 6651(a)(1) in the amount of $ 52,228. After concessions, the issues for decision are: (1) Whether petitioner is entitled to a marital deduction in the amount of $ 504,499. We hold that it is not. (2) Whether petitioner is entitled to a charitable deduction in the amount of $ 1,145,318. We hold that it is not. (3) Whether petitioner is liable for an addition to tax under section 6651(a)(1). We hold that it is. All section references are to the Internal Revenue Code in effect at the date of decedent's death, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated. FINDINGS OF FACT We incorporate by reference the stipulation of facts and attached exhibits. Petitioner is the Estate of R. Jack Simpson (decedent). Decedent was a resident of Cocoa, Brevard County, Florida, when he died on June 3, 1987. Pursuant to decedent's last will and testament, *262 First American Bank and Trust (First American), subsequently known as Comerica Trust Company of Florida, N.A. (Comerica), was appointed personal representative of the estate of decedent, with letters of administration being issued by the Circuit Court for Brevard County, Florida (circuit court), on December 18, 1987. At the time the petition was filed, Comerica's principal place of business was in Palm Beach, Florida. Comerica subsequently was replaced by Kenneth A. Whittaker (Whittaker), of Melbourne, Florida, as successor personal representative pursuant to the July 2, 1992, order of the circuit court. Decedent had been engaged in the real estate business, buying and developing property, and buying mortgages and loaning money. Over a 15-year period, decedent was advised in the legal aspects of his real estate business by John Minot (Minot), a Florida attorney. Minot has practiced real estate and probate law in Florida for over 30 years. Decedent was diagnosed with terminal cancer in 1985. Decedent married Hazel Catechis (Mrs. Simpson or surviving spouse) on March 22, 1986. Two days before their marriage, decedent and the then Ms. Catechis entered into an antenuptial agreement *263 prepared by Minot. The parties to the agreement waived all statutory rights to and interests in each other's property. Decedent and Ms. Catechis executed three originals of the agreement, one for each party thereto, and one for Minot, which remained in his possession. The agreement did not preclude either spouse from making lifetime or testamentary gifts or provisions in favor of the other. Minot and decedent developed an estate plan for decedent through consultations with people more experienced in estate planning, including a senior vice president and trust officer from First American, John C. Patten (Patten). Decedent had no issue and several brothers and sisters whom he did not feel deserved to share in his estate. Decedent wished to benefit certain organizations, provide for the education of certain nieces and nephews, provide for a memorial to a brother killed in World War II, and make minimal provisions for his spouse. Once decedent's estate plan was developed, Lester Lintz (Lintz), a Florida attorney specializing in real estate and estate planning and administration, drafted decedent's last will and testament and revocable trust agreement. The draft documents were *264 circulated to Patten, who was aware of the antenuptial agreement. Lintz did not know of the antenuptial agreement at the time he prepared the will and trust agreement. On October 27, 1986, decedent created a revocable trust and executed a last will and testament. Decedent named Minot as personal representative of his estate and First American as alternate or successor. Decedent acted as the sole trustee of the trust until his death, after which Minot and First American were named as cotrustees. Under the provisions of decedent's will, any of his property that had not been transferred into the trust during his lifetime would, after payment of debts, taxes, and specific devises, "pour over" to fund the trust at his death. Both the will and the trust agreement contained a provision devising decedent's residence to his spouse, if surviving. The trust agreement provided for distributions equal to 1 percent of the balance of the remaining trust estate to the following five organizations: The Salvation Army, the Fleet Reserve Association at Cocoa, Florida, the Cocoa Lions Club, the Free and Accepted Masons at St. Petersburg, Florida, and the Arabic Ancient Order of the Nobles of the *265 Mystic Shrine -- Azan Temple. There was no requirement that the beneficiaries be qualified charities for purposes of a deduction under section 2055; however, respondent conceded that all named organizations were so qualified. The trust agreement also established educational trusts for nieces, nephews, and grandchildren of Mrs. Simpson, established a memorial fund for decedent's brother, and provided for the establishment of a residuary trust. The property of the residuary trust was to be held by decedent's trustees during the lifetime of his spouse and, pursuant to the terms of the trust, decedent's surviving spouse was to receive the lesser of $ 30,000 per year (payable in monthly installments of $ 2,500), or an annual income from the residuary trust. The trustees were empowered to make distributions to the surviving spouse during each year in excess of $ 30,000 from the income or principal of the trust, as the trustees determined to be necessary or desirable for her proper health, maintenance, and support. Upon the death of decedent's spouse, the trustees were directed to distribute the remaining principal and undistributed income of the residuary trust in equal shares to the *266 above-named charitable organizations. Decedent caused Minot to amend the revocable trust agreement twice in May 1987. Decedent eliminated the memorial fund for his brother on May 7, 1987, and created specific devises to a brother and a sister on May 15, 1987. On February 5, 1987, and on May 27, 1987, decedent transferred assets (real properties and mortgages) from his closely held corporation, Rebel Jack, Inc., to the revocable trust. Minot prepared all of the transfer documents. Decedent died on June 3, 1987, at the age of 67, survived by his spouse, who was then age 50. Minot waived his right to act as personal representative of the estate, and First American was appointed personal representative on December 18, 1987. Minot delivered decedent's will and an executed original of the antenuptial agreement to First American. First American commenced an action on January 21, 1988, in the circuit court requesting a determination as to whether decedent's February and May 1987 transfers of assets from Rebel Jack, Inc., to the revocable trust were valid and proper. The only parties involved were First American, as decedent's personal representative, and a guardian ad litem appointed *267 to represent the trust's interests. Minot, who prepared the amendment transferring the assets into the trust and who was cotrustee of the trust, was not involved in the proceeding. The named charitable beneficiaries of decedent's trust were not parties to the litigation, nor were they aware of it. The original complaint alleged that the transfers of assets into the inter vivos trust were negligently made and could result in an extremely large Federal tax liability for both Rebel Jack, Inc., and the estate, so as to "destroy a large portion of the estate, and subvert the purpose and intent of the decedent to pass his estate on to his heirs and beneficiaries." The complaint was amended later to delete references to Minot's negligence and the tax consequences, stating instead that decedent relied on material misrepresentations of the applicable law and facts, and did not intend for either the corporation or the estate to incur the adverse consequences of the transactions. The guardian ad litem denied these allegations in his answer to the original and amended complaints. By counterclaim, the guardian ad litem requested a mandatory injunction requiring First American, as personal *268 representative, to deliver over all of decedent's shares of Rebel Jack, Inc., pursuant to the terms of decedent's last will and testament. After a telephone hearing, the circuit court entered a final judgment on November 29, 1988, holding that decedent would not have made the conveyances had he not been under a mistake of fact and law and if he had had professional advice and direction. The circuit court directed the transfer of all properties back to Rebel Jack, Inc., and the transfer of Rebel Jack, Inc.'s stock from First American, as personal representative, to the guardian ad litem of decedent's trust. The estate tax return for decedent's estate, Form 706, was filed with the Atlanta Service Center on December 8, 1988, more than 3 months after its due date of September 3, 1988. On the Form 706, the estate took marital and charitable deductions based on the desired outcome of the yet-to-be-instituted proceedings in the circuit court. Petitioner has conceded that there was no reasonable cause for the late filing of the Federal estate tax return. Decedent's surviving spouse timely filed a claim to take her elective share of decedent's estate on January 5, 1989, pursuant to Fla. *269 Stat. Ann. sec. 732.201 (West 1976). On March 7, 1989, First American, as decedent's personal representative, filed a complaint in the circuit court asking for three declarations: The legal effect of the antenuptial agreement, the effect of the court's findings with respect to the antenuptial agreement upon the distribution of the estate, and whether it was decedent's intent that the balance of the trust estate pass solely to tax-exempt organizations qualified under section 501(c)(3). In the complaint, First American stated that, based on information and belief, decedent intended to revoke the antenuptial agreement by his actions. Neither our record nor the record of the circuit court proceeding reveals the basis for that belief. In the declaratory action, decedent's surviving spouse filed a motion for summary judgment and an affidavit in support claiming that after they married, she and decedent decided to revoke the antenuptial agreement and that to her knowledge decedent destroyed the original. She thereafter assumed it was revoked. One of the charitable beneficiaries, the Free and Accepted Masons, objected to Mrs. Simpson's motion for summary judgment on the basis of Florida's *270 "Dead Man's Statute", Fla. Stat. Ann. sec. 90.602 (West 1976). The motion was otherwise unopposed. Without a hearing, the circuit court entered an order on October 3, 1990, on the summary judgment motion holding that the antenuptial agreement had been revoked by the actions of decedent and that the surviving spouse was entitled to an elective share of decedent's estate, payable at the rate of $ 2,500 per month until the estate was settled when the balance of the elective share would be paid. The order also provided for a family allowance of $ 6,000. The court additionally ordered that the remaining assets of decedent's estate and trust be distributed as though the surviving spouse had predeceased decedent pursuant to Fla. Stat. Ann. sec. 732.211 (West 1976). The charities and Mrs. Simpson entered into an agreement in which the charities agreed not to appeal the circuit court's decision in return for Mrs. Simpson's giving up any rights, title, or interest in the trust. Under the terms of the agreement, Mrs. Simpson received outright almost $ 600,000 from the estate. The estate did not file an appeal because all of the beneficiaries had agreed. Neither proceeding before the *271 circuit court was an adversary proceeding. The estate and the beneficiaries were in agreement, and the circuit court granted the results requested by the personal representative. OPINION Marital Deduction
The first issue for decision is whether petitioner is entitled to a marital deduction. Section 2056(a) provides in pertinent part: For purposes of the tax imposed by section 2001, the value of the taxable estate shall * * * be determined by deducting from the value of the gross estate an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate.
Section 2056(b), however, disallows a marital deduction for a "terminable interest" in property that will terminate or fail either on the lapse of time or on the occurrence of an event or contingency. An interest in the nature of a life estate is ineligible for the martial deduction. Estate of Bennett v. Commissioner, 100 T.C. 42, 55 (1993); Estate of Nicholson v. Commissioner, 94 T.C. 666, 671 (1990). *272 Congress modified the terminable interest requirement by allowing a marital deduction for "qualified terminable interest property" (QTIP). Sec. 2056(b)(7)(B); Economic Recovery Tax Act of 1981 (ERTA), Pub. L. 97-34, sec. 403(d), 95 Stat. 172, 302. QTIP interests are those in which a decedent passes to a surviving spouse "a qualifying income interest for life." Sec. 2056(b)(7)(B)(i)(II). Under section 2056(b)(7)(B)(ii)(I), a qualifying income interest is one under which the surviving spouse is entitled to "all the income from the property, payable annually or at more frequent intervals," and, while the surviving spouse is still alive, no one else can appoint any part of the property to anyone but the surviving spouse. Estate of Nicholson v. Commissioner, supra.
Under the terms of decedent's will and trust, Mrs. Simpson received a specific bequest of the residence outright and a lifetime interest in a limited amount of the annual income from the residuary trust, with the remainder interest passing to charities upon her death. The parties are in agreement that the residence qualifies for the marital deduction. The provision for payment to her from *273 the residuary trust, however, is a nondeductible terminable interest not qualifying for the marital deduction. Sec. 2056(b). Petitioner does not argue otherwise. Rather, petitioner contends that the interest passing to Mrs. Simpson as a result of the circuit court proceeding and the agreement of the parties qualifies for the marital deduction. Generally, the character of the interest passing to a surviving spouse taking under a decedent's will is determined by the will. If, however, a surviving spouse claims a statutory elective share against the will, then the property interest retained by her is considered to have passed from the decedent to the surviving spouse. Sec. 20.2056(e)-2(c), Estate Tax Regs. The marital deduction consequently is based upon the interest received by the surviving spouse pursuant to the election. Mrs. Simpson's election to take against the will in the face of the antenuptial agreement caused the estate to seek a declaration from the circuit court. When the circuit court rendered a judgment that the antenuptial agreement was null and void, the surviving spouse and the charities entered into an agreement regarding Mrs. Simpson's interest in decedent's *274 estate. Property passing to a surviving spouse as a result of a will contest or similar litigation will qualify for the marital deduction only if the property interests assigned or surrendered to the surviving spouse are received in "bona fide recognition of enforceable rights of the surviving spouse in the decedent's estate." Sec. 20.2056(e)-2(d)(2), Estate Tax Regs.; Estate of Hubert v. Commissioner, 101 T.C. 314, 318 (1993). A bona fide recognition is presumed where the assignment or surrender was made pursuant to a decision of a local court upon the merits in an adversary proceeding following a genuine and active contest. A local court's decision will be accepted only to the extent that the court passed upon the facts upon which deductibility of the property interests depends. An assignment or surrender, made pursuant to a decree rendered by consent or agreement not to contest the will, will not necessarily be accepted as a bona fide evaluation of the rights of the spouse. Estate of Hubert v. Commissioner, supra; sec. 20.2056(e)-2(d)(2), Estate Tax Regs. Respondent contends that petitioner has failed to demonstrate *275 that Mrs. Simpson's receipt of an elective share in decedent's estate was a bona fide recognition of her enforceable rights in decedent's estate as required by section 20.2056(e)-2(d)(2), Estate Tax Regs. We agree. In Commissioner v. Estate of Bosch, 387 U.S. 456 (1967), the Supreme Court held that a Federal court deciding the estate tax consequences of an attempted disclaimer was not bound by the State trial court's adjudication of the property rights involved. Citing Erie R. Co. v. Tompkins, 304 U.S. 64 (1938), the Court noted that "state law as announced by the highest court of the State is to be followed." Commissioner v. Estate of Bosch, supra at 465. The Court explained that the State's intermediate appellate court decisions should be considered in deciding State law unless the Federal court is convinced that the highest court of the State would rule otherwise. Therefore, the Court concluded that a Federal court may not always be bound by the decision of the intermediate appellate court and that "when the application of a federal statute is involved, the decision of a state trial *276 court as to an underlying issue of state law should a fortiori not be controlling." Commissioner v. Estate of Bosch, supra at 465; Estate of Hubert v. Commissioner, supra at 319. Finally, the Court explained: the underlying substantive rule involved is based on state law and the State's highest court is the best authority on its own law. If there be no decision by that court then federal authorities must apply what they find to be the state law after giving "proper regard" to relevant rulings of other courts of the State. In this respect, it may be said to be, in effect, sitting as a state court. [Commissioner v. Estate of Bosch, supra at 465; emphasis added; citation omitted.]
In light of the Supreme Court's decision in Estate of Bosch, courts have concluded that if the decision of a State trial court on a matter of State law is not binding for estate tax purposes, a good faith settlement of such an issue cannot be either. Ahmanson Found. v. United States, 674 F.2d 761, 774 (9th Cir. 1981); Estate of Hubert v. Commissioner, supra at 319. *277 Even under "the most narrow reading of Bosch, either a good faith settlement or a judgment of a lower state court must be based on an enforceable right, under state law properly interpreted, in order to qualify as 'passing' pursuant to the estate tax marital deduction." Ahmanson Found. v. United States, supra at 775. Not every State court probate proceeding represents bona fide, adversary litigation, and a decree rendered therefrom is not conclusive as to property interests for Federal estate tax purposes. Estate of Rowan v. Commissioner, 54 T.C. 633, 638 (1970). There are a number of aspects to a State court proceeding which can raise questions and cast doubt upon its bona fide, adversary character, including whether all persons interested in the estate were aware of the proceedings so as to participate, and whether there is a hearing transcript or other record of how the court reached its decision. Id.
Taxpayers can achieve favorable but collusive results from State court proceedings in which the Commissioner has not been made a party or which appear to have been pursued for the purpose of affecting a Federal *278 tax liability. Collusion does not imply fraudulent or improper conduct; rather, it implies that the parties have joined in submission of the issues such that there was no genuine issue of law or fact as to a beneficiary's rights to or property interest in an estate. Estate of Peyton v. Commissioner, 323 F.2d 438, 444 (8th Cir. 1963) (citing Saulsbury v. United States, 199 F.2d 578, 580 (5th Cir. 1952)), affg. T.C. Memo. 1962-205. In determining that a State court proceeding is not an adversary proceeding, we do not assume "any lack of competence or disinterestedness among state judges; no more would be needed than a complex issue of law, a crowded calendar, and the presentation to a busy judge of but essentially a single viewpoint." Commissioner v. Estate of Bosch, supra at 478 (Harlan, J., dissenting). The outcome of such a proceeding would be an explication of State law that is not necessarily "either a reasoned adjudication of the issues or a consistent application of the rules adopted by the State's appellate courts." Id.
We first observe that the estate *279 claimed a deduction for the amount of the elective share on its return filed before Mrs. Simpson filed her claim and long before the circuit court entered its decision. In its response to Mrs. Simpson's claim, First American, as decedent's personal representative, represented to the circuit court that decedent intended to set aside the antenuptial agreement. The estate and beneficiaries most likely had arrived at an agreement before initiation of the proceeding in the circuit court. Furthermore, although one charitable beneficiary objected to the admissibility of Mrs. Simpson's affidavit, the record does not indicate that such objection was pursued. The pleadings before the circuit court contained allegations regarding decedent's revocation of the antenuptial agreement but no evidence to support them. Neither Minot, who prepared the antenuptial agreement and amended decedent's estate plan, nor Lintz, who prepared decedent's will and trust agreement, participated in the proceeding. There was thus no opposition to Mrs. Simpson's claim. We conclude that the circuit court was not presented with any unresolved factual issues. No hearing was held, and the circuit court entered an *280 order giving the parties to the matter, including the charitable beneficiaries, the result they sought. The circuit court proceeding was neither a genuine and active contest nor adversarial in nature. We conclude that the circuit court did not pass upon the facts upon which the marital deduction depends. The settlement agreement was similarly not a good faith compromise of a bona fide dispute. Consequently, Mrs. Simpson's receipt of her elective share in decedent's estate was not a bona fide recognition of her right to it. In deciding whether the surviving spouse has enforceable rights in decedent's estate, we must make an independent determination as to the enforceability of Mrs. Simpson's claim to a spouse's elective share under Florida State law. Estate of Brandon v. Commissioner, 828 F.2d 493, 499 (8th Cir. 1987), revg. and remanding 86 T.C. 327 (1986); Estate of Hubert v. Commissioner, 101 T.C. at 319-320. The surviving spouse of a person who dies domiciled in Florida has a right to an elective share of the decedent's estate. Fla. Stat. Ann. sec. 732.201 (West 1976). The right to *281 an elective share may be waived before or after marriage by agreement. Fla. Stat. Ann. sec. 732.702 (West 1976). Antenuptial agreements waiving such rights are to be construed like other types of contracts and are generally presumed valid in Florida. Del Vecchio v. Del Vecchio, 143 So. 2d 17 (Fla. 1962); Cantor v. Palmer, 166 So. 2d 466 (Fla. Dist. Ct. App. 1964). Furthermore, antenuptial agreements do not preclude either spouse from making a bequest to the surviving spouse. 97 C.J.S., Wills, sec. 1266 (1957). An antenuptial agreement may be abandoned by mutual consent without consideration. McMullen v. McMullen, 185 So. 2d 191 (Fla. Dist. Ct. App. 1966). Petitioner presented the expert report and testimony of Judge Stanley Wolfman, a former circuit court judge in Florida. Judge Wolfman merely stated that in his opinion, the circuit court's declaratory judgment order setting aside the antenuptial agreement was within the judge's discretion and likely would have been upheld on appeal. He did not attempt to pass judgment on the merits. Although we accepted Judge Wolfman's testimony, *282 his opinion cannot usurp this Court's function in determining the issues before us. See Estate of Carpenter v. Commissioner, T.C. Memo. 1993-97. Our independent inquiry into Florida law does not result from a determination that the circuit court's order was not within its discretion. We conclude that we are not bound by the order for Federal estate tax purposes because it was not the result of an adversary proceeding and, therefore, not a pronouncement upon which deductibility of the surviving spouse's property interest can rest. Commissioner v. Estate of Bosch, 387 U.S. 456 (1967); sec. 20.2056(e)-2(d)(2), Estate Tax Regs. Petitioner has not presented any persuasive evidence supporting a finding that Mrs. Simpson had an enforceable right in decedent's estate. There is no testimony or record regarding decedent's alleged revocation of the antenuptial agreement. Mrs. Simpson did not testify. Rather, petitioner proffered the statements of Whittaker, the successor personal representative of decedent's estate, that the previous personal representative believed decedent intended to abandon the antenuptial agreement. *283 Decedent never indicated his intent to abandon the antenuptial agreement to Minot, who prepared the antenuptial agreement and participated in developing decedent's estate plan and amendments thereto. Minot testified that decedent wished to make only minimal provisions for Mrs. Simpson's care in his estate plan. Petitioner's case appears to rest solely on the circuit court's order setting aside the antenuptial agreement and the agreement of the parties to that proceeding. We have concluded that neither the proceeding nor the settlement agreement was adversarial in nature. There is consequently a total lack of evidence in the record before us that would permit a conclusion as a matter of Florida law that the antenuptial agreement was abandoned. Petitioner has failed to satisfy its burden of proof as to the factual matters upon which it relies. DePaoli v. Commissioner, T.C. Memo. 1993-577. The source and nature of the property interest received by Mrs. Simpson derived from the circuit court's order and the agreement with the charitable beneficiaries, not from an enforceable right under Florida law. See Estate of Nachimson v. Commissioner, 50 T.C. 452, 454-456 (1968). *284 Further, the existence of a good faith settlement agreement is not enough to find that Mrs. Simpson had an enforceable right. Estate of Brandon v. Commissioner, supra at 499; Ahmanson Found. v. United States, 674 F.2d at 774; Estate of Hubert v. Commissioner, supra at 319. We conclude that Mrs. Simpson's receipt of an elective share in decedent's estate was not a bona fide recognition of an enforceable right and, therefore, petitioner is not entitled to a marital deduction under section 20.2056(e)-2(d)(2), Estate Tax Regs. Charitable Deduction
A deduction is allowed for transfers of property otherwise includable in the gross estate for bequests to certain charitable organizations. Sec. 2055(a). A charitable bequest of a remainder interest in a trust will qualify for deduction only if it is made in one of three specified forms: A charitable remainder annuity trust, a charitable remainder unitrust, or a pooled income fund. Sec. 2055(e)(2)(A). Reformation of an instrument to meet the above requirements is permitted under section 2055(e)(3). A deduction is allowed for any reformation *285 that changes a reformable interest into a qualified interest within the limitations set forth in section 2055(e)(3)(B) and (C). Petitioner has not sought such a reformation of the trust instrument in this case. Respondent concedes that all five charities named in decedent's will are qualified charitable organizations under section 2055(a), and that the distribution of 1 percent of the balance of the remaining trust estate to the charities qualifies for a charitable deduction under section 2055. Respondent argues, however, that the provisions of the trust created a split-interest trust that did not qualify for a deduction under section 2055, and that the post-death actions by the estate and the State court decisions are not binding for Federal estate tax purposes. We agree. Petitioner does not argue that the charitable remainder in decedent's pourover trust qualified for the deduction under section 2055 as it existed on the date of decedent's death. Rather, petitioner argues that the estate is entitled to a deduction on the basis of the actions of the circuit court and the beneficiaries giving Mrs. Simpson an elective share outright such that the charities could take their remainder *286 immediately. As discussed above, these actions were nonadversarial in nature and, therefore, we are not bound by them. Commissioner v. Estate of Bosch, supra;Estate of Hubert v. Commissioner, 101 T.C. 314 (1993). An order or judgment of a State trial court cannot operate to change the Federal tax consequences of a completed transaction. To hold otherwise would allow opportunity for collusive State court actions having the sole purpose of reducing Federal tax liabilities. Van Den Wymelenberg v. United States, 397 F.2d 443, 445 (7th Cir. 1968). Furthermore, the reformation of an instrument may have retroactive effect as between the beneficiaries but not as to nonparties such as the Federal Government. Id.; Estate of Bennett v. Commissioner, 100 T.C. at 60; Estate of Nicholson v. Commissioner, 94 T.C. at 674. Petitioner has therefore failed to establish its entitlement to a charitable deduction in excess of the amount allowed by respondent. Addition to Tax
Section 6075(a) provides that a Federal estate tax return must *287 be filed within 9 months after the date of a decedent's death. Section 6651(a)(1) provides for an addition to tax of 5 percent of the tax for each month during which a failure to file continues, not exceeding 25 percent in the aggregate, unless it is shown that a failure to file any return on its due date is due to reasonable cause and not due to willful neglect. Petitioner's Federal estate tax return was filed December 8, 1988, more than 3 months after its September 3, 1988, due date, as extended by a timely obtained extension of time to file. Petitioner did not proffer any argument or explanation for the delay and is, therefore, deemed to concede the addition to tax. In accordance with the foregoing, Decision will be entered under Rule 155.