**ESTATE OF Bert B. RAPP, Deceased; Richard L. Rapp, Executor, Petitioner–Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent– Appellee.**

No. 96–70742.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 2, 1998.

Decided March 18, 1998.

Amended on Partial Grant of Rehearing May 15, 1998.

Gerald E. Lunn, Jr., Los Angeles, California, for petitioner–appellant.

Richard Farber, Washington, DC, for respondent–appellee.

Before: FLETCHER, MAGILL,* and T.G. NELSON, Circuit Judges.

FLETCHER, Circuit Judge:

The executor of Mr. Bert Rapp's estate appeals the tax court's determination that a trust established by Mr. Rapp does not qualify as "qualified terminable interest property" (QTIP), as defined by 26 U.S.C. § 2056(b)(7). As such, the value of the trust may not be deducted when determining federal estate taxes owed.

We have jurisdiction, 26 U.S.C. § 7482, and we affirm.

### I.

The testator, Mr. Bert Rapp, died in February 1988. He was survived by his wife, Laura Rapp, and two children, Richard and David Rapp. Mr. Rapp willed his one-half of the community property to a trust.[1] Richard is the executor of the estate under Mr. Rapp's will and trustee of the trust. All relevant parties are citizens of California.

The issue in this case is whether the trust created by Mr. Rapp's will constitutes a QTIP trust, qualifying it for the marital tax deduction. A QTIP is an exception to an

exception. Generally, the value of property passed directly from a testator to a surviving spouse is deducted before computing federal estate taxes.[2] 26 U.S.C. § 2056(a). However, if the interest passing to the spouse consists only of a life estate or other terminable interest, the value of that interest is not deducted when determining the tax owed. 26 U.S.C. § 2056(b). If the terminable interest qualifies as a QTIP, however, the surviving spouse can elect the marital deduction as if the interest passed directly and without restraint to him or her. This is done by creating a trust under which property—

(I) passes from the decedent;

(II) in which the surviving spouse has a qualifying income interest for life, and,

(III) to which an election . . . applies.

26 U.S.C. § 2056(b)(7)(B)(i). A surviving spouse has a "qualifying income interest for life" if:

(I) the surviving spouse is entitled to all the income from the property, payable annually or at more frequent intervals, or has a usufruct interest for life in the property, and

(II) no person has a power to appoint any part of the property to any person other than the surviving spouse.

26 U.S.C. § 2056(b)(7)(B)(ii)

The will left by Mr. Rapp did not create a QTIP trust; however, the will as reformed by the California probate court did create a QTIP trust. The primary issue in this case is the effect to be given to the California probate court's reformation.

### A.

In 1978, Laurence Clark, Mr. Rapp's attorney, prepared wills for both of the Rapps. Mr. Clark was not an estate attorney, but served as a consultant to Mr. Rapp in his business dealings. The 1978 wills were essentially identical to each other, and provided that household furnishings and other person-

---

* Honorable Frank J. Magill, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

1. By law of California, Mrs. Rapp received as her one-half of the community property, property valued at five million dollars.

2. The tax deduction is in reality a tax deferral since the property is taxed when (or if) it becomes part of the surviving spouse's estate upon that spouse's death.

al effects were to be given to the surviving spouse, and that all other property of the testator was to be held in trust during the life of the surviving spouse. The children were to be given the power as co-trustees to distribute such amounts from the principal and income of the trust as they determined necessary for the surviving spouse's health, education and support.[3] Any decision to do so would be in their "absolute discretion." Upon the death of the surviving spouse, the trust was to cease and the remaining assets were to be distributed to the two children or their living issue.

In 1986, Mr. Clark prepared new wills. These wills revoked the 1978 wills but were substantially similar.[4] Again, Mr. and Mrs. Rapp's wills were nearly identical to each other. The trust was to operate as previously described. Article Fifth (b) of Mr. Rapp's will stated:

> If at any time, in the absolute discretion of the Trustee or co-Trustees, my wife, LAURA B. RAPP, should for any reason be in need of funds for her proper health, education and support, the Trustee may in his absolute discretion pay to or apply for the benefit of my wife, such amounts from the principal and income of the trust estate, up to the whole thereof, as the Trustee from time to time may deem necessary or advisable for her use and benefit.

### B.

The 1986 will of Mr. Rapp was admitted to probate on May 5, 1988. Mrs. Rapp asked the probate court to modify her husband's will so that the trust created by the will would qualify for the marital deduction as a QTIP trust. Her petition to the probate court alleged:

> it was decedent's intention that the Trust created ... for the benefit of Petitioner [i.e., Mrs. Rapp] during her lifetime was intended to qualify for the QTIP election and that decedent believed that the Trustees would pay all of the income from the Trust, at least annually, to or for the benefit of Petitioner during her lifetime.

She claimed that the trust was a "marital deduction gift" as defined by section 21520(b) of the California Probate Code.[5] Her petition relied upon the probate court's power to modify or terminate a trust upon consent of all parties, Cal. Prob.Code § 15403, or its power to modify or terminate a trust due to changed circumstances, Cal. Prob.Code § 15409(a).[6]

Oral argument was held before the probate court. A guardian ad litem was appointed to represent Richard Rapp's two minor children. No witnesses were called and no documents were introduced into evidence. Richard Rapp did not contest his mother's petition. He did not ask Mr. Clark, creator of the wills, to testify, and Mr. Clark did not appear.[7] The IRS did not receive notice of the hearing and did not appear. The guardian ad litem did not challenge Mrs. Rapp's petition.

The probate court granted Mrs. Rapp's petition. The court modified Article Fifth (b) to read:

> During the lifetime of my wife, LAURA B. RAPP, the Trustee or co-Trustees shall

---

3. In this action, Richard is the sole trustee; David relinquished his position as co-trustee.

4. The designation of successor executors and alternate trustees was changed.

5. California defines a "marital deduction gift" as a transfer of property that is intended to qualify for the marital deduction. Cal. Prob.Code § 21520(a). A "marital deduction" is defined as that which meets the federal definition of a transfer under section 2056 of the Internal Revenue Code. Id. at § 21520(a).

6. Cal. Probate Code § 15403 provides:

 [Unless continuance of the trust is necessary to carry out a material purpose of the trust] if all beneficiaries of an irrevocable trust consent, they may compel modification or termination of the trust upon petition to the court.
 Cal. Probate Code § 15409 provides that a court may modify or terminate a trust if:
 owing to circumstances not known to the settlor and not anticipated by the settlor, the continuation of the trust under its terms would defeat or substantially impair the accomplishment of the purposes of the trust.

7. Mr. Clark initially was retained as counsel for the estate but was subsequently replaced. Although Mr. Clark did not testify at the reformation hearing, he did testify before the tax court at the behest of the government. He indicated that Mr. Rapp specifically intended to create a trust for his children's benefit, and did not wish to leave outright his money to Mrs. Rapp.

pay the net income from the corpus of the trust annually or at more frequent intervals to or for the benefit of LAURA B. RAPP, during her lifetime.... Any income accrued or held undistributed at the time of my wife's death shall be distributed to her estate.

and added the following provision:

I authorize my executor to elect to treat the trust created under this Article FIFTH, or any portion thereof, as "qualified terminable interest property" in order to obtain the marital deduction for such property for federal estate tax purposes. Whether or not my executors make such an election, I hereby exonerate my executors from any liability resulting from making or failing to make such an election.

This order was entered October 31, 1988, and became final and unappealable as of April 30, 1989.

### C.

Shortly after the probate court's order was entered, the executor filed with the Internal Revenue Service (IRS) an application for extension of time to file a federal estate tax return. The return normally is due 9 months after a testator's death. The executor noted in his application that he intended to make an election under § 2056 for QTIP exemption, but that he could not determine yet which portion of the estate was to be claimed as a QTIP deduction. He also sent a payment of $156,204 as an estimate of the taxes owed on the estate, but offered no explanation as to how he arrived at that figure.

In May 1989, after the probate court's reformation became final, the executor filed the final federal estate tax return. The exec-

utor elected to claim a marital QTIP deduction, but only with respect to as much of the estate as would reduce the total estate tax owed to $156,424, the amount that had been previously paid. Thus, the marital deduction claimed on the return totalled $3,683,899.38.[8]

The IRS sent a notice of deficiency to the executor stating that he had failed to substantiate fully the marital deduction claimed. The IRS allowed the deduction only to the extent of the property that passed directly to Mrs. Rapp under Mr. Rapp's will, consisting of the household furnishings and other personal property valued at $435,262.50. The executor appealed the decision and his claim was heard before the tax court.

After hearing argument, the tax court held that the probate court's reformation order was not binding absent an affirmation by the California Supreme Court. In the absence of an affirmation by the California Supreme Court, the tax court considered itself authorized to determine whether the probate court's order was in conformity with California law. After reviewing California law, the tax court concluded that the probate court had erred in reforming Mr. Rapp's will because the will was not ambiguous and there was little or no evidence that Mr. Rapp intended to create a QTIP trust. As such, the tax court held that, for federal estate tax purposes, the trust created by Mr. Rapp was not a QTIP trust, and that the claimed deficiency was correct.[9]

### II.

 We review decisions of the tax court on the same basis as we would a decision rendered by a district court in a bench trial. *Condor Int'l, Inc. v. Commissioner of*

---

**8.** This figure is arrived at by the following computation:

| | |
|---|---|
| $5,086,882.60 | TOTAL value of Mr. Rapp's estate less value of assets devised directly to Mrs. Rapp and value of assets owned jointly with others |
| (802,510.21) | less percentage of property that the executor elected not to consider as QTIP |
| (840,285.11) | less aggregate nonmarital deductions claimed |
| 3,444,087.28 | SUBTOTAL of value of QTIP assets elected for deduction |
| 435,262.50 | plus value of other assets passing to Mrs. Rapp |
| 3,879,349.78 | TOTAL VALUE OF INTERESTS passing to Mrs. Rapp |
| (156,424.00) | less federal estate taxes |
| (39,026.40) | less other death taxes |
| $3,683,899.38 | |

**9.** The tax court assessed two other arguments raised by the executor at the proceedings before it. Neither were preserved on appeal.

*Internal Revenue,* 78 F.3d 1355, 1358 (9th Cir.1996). A tax court's conclusions of law and construction of the Internal Revenue Code are reviewed de novo. *Id.* Its factual findings are reviewed for clear error. *Id.*

■ The taxpayer bears the burden of proving eligibility for the deduction claimed. Tax Ct. R. Prac. & P. 142(a); 26 U.S.C. foll. § 7453.

### III.

The IRS argues, and the tax court agreed, that the probate court's reformation of Mr. Rapp's will is without binding effect for the purpose of determining federal estate taxes owed, unless California's highest court has affirmed the result. Both rely on *Commissioner of Internal Revenue v. Estate of Bosch,* 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967). We agree that *Bosch* is controlling.

### A.

■ In *Bosch,* the respondent, Mrs. Bosch, filed a federal estate tax return in which she claimed a marital deduction. *Id.* at 458, 87 S.Ct. at 1779. The IRS denied the deduction. Mr. Bosch's will had created a trust from which Mrs. Bosch was to receive all income and in which Mrs. Bosch had a general power of appointment. If she declined that appointment, however, half of the corpus of the trust was to go to Mr. Bosch's heirs.

The entire trust would qualify as tax exempt only if Mrs. Bosch retained the general power of appointment. Before Mr. Bosch died, Mrs. Bosch executed a release of her general power of appointment. Thus, whether or not the entire value of the trust was to be taxed depended upon the validity of the release. Before the tax court, Mrs. Bosch claimed that the release was invalid. While those proceedings were pending, Mrs. Bosch sought and received a determination from a New York state court that the release was a nullity under state law. The result was that a larger estate was to go to Mrs. Bosch as

the surviving spouse, a diminished inheritance was to go to other beneficiaries, and a larger marital deduction could be claimed.

The issue before the Supreme Court was what effect was to be given to the state court's determination regarding the validity of the release. The Court first noted that neither res judicata nor collateral estoppel applied. *Id.* at 463, 87 S.Ct. at 1781–82. The Court then reviewed the legislative history of the marital deduction statute, and concluded that Congress did not intend state court actions to have a determinative effect on federal tax questions.[10] It noted:

> [Congress] said that "proper regard," not finality "should be given to interpretations of the will" by state courts and then only when entered by a court "in a bona fide adversary proceeding." We cannot say that the authors of this directive intended that the decrees of state trial courts were to be conclusive and binding on the computation of the federal estate tax as levied by the Congress. If the Congress had intended state trial court determinations to have that effect on the federal actions, it certainly would have said so—which it did not do.

*Id.* at 464, 87 S.Ct. at 1782 (citations omitted). Relying on *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), the Court stated:

> when the application of a federal statute is involved, the decision of a state trial court as to an underlying issue of state law should *a fortiori* not be controlling.... If there be no decision by [the State's highest court] then federal authorities must apply what they find to be the state law after giving the "proper regard" to relevant rulings of other courts of the State. In this respect, it may be said to be, in effect, sitting as a state court.

*Id.* at 465, 87 S.Ct. at 1782–83 (citation omitted).

This rule remains valid today. *See, e.g., Ahmanson Found. v. U.S.,* 674 F.2d 761, 774 (9th Cir.1981) (holding that neither a lower

---

**10.** The executor argues that the Court in *Bosch* was guided by Congressional intent to construe narrowly the marital deduction, while the legislative history of QTIP suggests that Congress intended the QTIP deduction to be construed broadly. He relies on *Estate of Clayton v. Com-*

*missioner of Internal Revenue,* 976 F.2d 1486, 1497–98 (5th Cir.1992). That the QTIP exception is to be construed broadly, however, does not control the larger issue of what effect state court decisions are to be given when determining federal estate taxes.

state court decision following a good faith adversary proceeding nor a private good faith settlement is binding on federal courts when determining federal estate tax consequences); *Estate of Kraus v. Commissioner of Internal Revenue*, 875 F.2d 597, 600–01 (7th Cir.1989) (holding that state court's reformation of a will is not binding on federal courts because "only the state's highest court can make a ruling on state law that binds the federal courts"); *Estate of Selby v. U.S.*, 726 F.2d 643, 646 (10th Cir.1984) (holding that the federal court is obligated to review state probate court proceeding to determine whether proper state law was applied where highest state court has not spoken, and where issue of federal tax liability is involved).

In this case, Mrs. Rapp sought modification in the probate proceeding for the sole purpose of reforming her husband's will so that the trust would qualify as a QTIP trust. As in *Bosch*, the state court proceedings were "brought for the purpose of directly affecting federal estate tax liability," and, as in *Bosch*, the issue before the state court was "determinative of federal estate tax consequences." *Bosch*, 387 U.S. at 462–63, 87 S.Ct. at 1781–82. Accordingly, the principle of *Bosch* applies here. The tax court correctly held that it was not bound by the California probate court's reformation of Mr. Rapp's will.

**B.**

The executor does not argue that the tax court improperly applied California law. In fact, the executor concedes that the probate court's decision to reform Mr. Rapp's will was erroneous. Instead, the executor argues that the tax court was without power to ignore the California probate court decision to reform Mr. Rapp's will, i.e., that *Bosch* is inapplicable to the instant case. He argues that the tax court only needed to determine whether Mrs. Rapp had a QTIP trust as of the proper "measuring date." According to

the executor, the proper measuring date is the date on which the executor elected a QTIP deduction,[11] and as of that date, Mrs. Rapp had a QTIP trust because the probate court's order had become final. *Bosch*, he argues, cannot be read to stand for the proposition that a state court order affixing the property rights of a taxpayer may be ignored where the order becomes final and unappealable as of the relevant measuring date for federal tax purposes. The executor argues that Rev. Rul. 73–142, 1973–1 C.B. 405 (hereinafter Revenue Ruling 73–142), supports his position, and is binding on the IRS Commissioner.

■ Regardless of the proper measuring date, however, the executor's argument fails because, contrary to the executor's assertion, *Bosch* does stand for the proposition that a probate court decision may be ignored when determining federal tax consequences, even when that order is final, if the decision is contrary to state law.

The executor's argument that *Bosch* is inapplicable is unavailing. The executor argues that *Bosch* does not permit the tax court to ignore the import of a state court decision that has become final and unappealable, i.e., one that cannot be directly challenged. There is no language in *Bosch* or subsequent decisions, however, that would support this position. That the California Supreme Court itself can no longer overrule the probate court's decision is irrelevant. *Bosch* stands only for the proposition that the federal court is not bound by the state court proceedings *for determining federal estate taxes;* to this end, the tax court decision does nothing to upset the actual outcome of the probate court proceedings. Mrs. Rapp will still enjoy the benefits of the reformation for which she petitioned in probate court. The estate simply will not receive the federal tax benefits of a QTIP.[12]

■ Revenue Ruling 73–142, cited by the executor, does not support his position. As

---

11. The government argues that the proper measuring date is the date of the testator's death. *See, e.g., Jackson v. United States*, 376 U.S. 503, 505, 84 S.Ct. 869, 870–71, 11 L.Ed.2d 871 (1964); *Estate of Heim v. Commissioner of Internal Revenue*, 914 F.2d 1322, 1327 (9th Cir.1990). As we explain in Part III.C., we need not determine the proper measuring date in this case.

12. To hold that the probate court's order is binding on the federal courts merely because no one appealed would be inconsistent with the underlying policy considerations behind *Bosch*, that is, to prevent collusive state court proceedings brought only to avoid federal estate taxes. *See, e.g., Estate of Simpson v. Commissioner of Internal Revenue*, 67 T.C.M. (CCH) 3062 (1994) (not-

the executor correctly notes, revenue rulings are not binding as to the taxpayer, but may limit the IRS' ability to assert a position that is contrary to that asserted in the ruling if the ruling is published, to the extent that the ruling addresses a similar issue. *See Beneficial Found., Inc. v. U.S.,* 8 Cl.Ct. 639, 644–45 (Cl.Ct.1985); *cf. Estate of Kosow v. Commissioner of Internal Revenue,* 45 F.3d 1524, 1528 n. 4 (11th Cir.1995) (noting that taxpayers may assert revenue rulings as a shield, although they do not have the effect of law and are not binding on the courts). However, Revenue Ruling 73–142 is not analogous to the instant case.

The decedent in Revenue Ruling 73–142 created a trust during his lifetime for the benefit of his wife and children. Under the terms of the trust instrument, the decedent reserved to himself the power to appoint or discharge a trustee at any time. The trustee had the unreserved power to distribute income from the trust. Before his death, the decedent, in a non-adversary action before the state court, asked the state court to interpret the trust instrument. The state court held that the trust the decedent created gave the decedent the power to remove and appoint a trustee only once. This decision was contrary to the law of the state. Subsequent to this order, the decedent removed the original trustee and appointed another. Thus, under the state court order, the decedent no longer had a right to remove the trustee as of the date of his death.

The question before the IRS was the effect to be given to the state order in determining the estate tax consequences of the trust created by the decedent. Under the tax law at the time, if the decedent had retained the unfettered right during his life to designate the trustee, the value of the trust was to be included in his estate for tax purposes; if not, the value of the trust was to be excluded.

In its ruling, the IRS held that the grantor did not have the unlimited power to appoint a trustee because the state court decree had become final and unappealable, and was *"conclusive as to those parties,"* despite the

fact that the decision was contrary to state law. Revenue Ruling 73–142 (emphasis added). The value of the trust, therefore, could not be included in the decedent's federal estate taxes. The IRS noted:

> In this case the lower court had jurisdiction over the parties and over the subject matter of the proceeding. Thus, the time for appeal having elapsed, its judgment is final and conclusive as to those parties, regardless of how erroneous the court's application of the state law may have been. Consequently, after the time for appeal had expired, the grantor-decedent did not have the power to appoint himself as successor trustee. The aforesaid rights and powers which would otherwise have brought the value of the trust corpus within the provisions of the [tax code] were thus effectively cut off before his death. Unlike the situation in *Bosch,* the decree in this case was handed down before the time of the event giving rise to the tax (that is, the date of the grantor's death). Thus, while the decree would not be binding on the Government as to questions relating to the grantor's power to appoint himself as trustee prior to the date of the decree, it is controlling after such date since the decree, in and of itself, effectively extinguished the power.

Revenue Ruling 73–142. That is not this case. The state court proceeding at issue in Revenue Ruling 73–142 bound the testator himself before his death. After the decree became final and the testator exercised his power once, the testator no longer retained the type of power necessary for the trust to be considered under his control during his lifetime and thus was not part of his estate upon his death. By contrast, here the state court proceedings took place after Mr. Rapp's death. The executor argues that this distinction is irrelevant. We disagree. Before death, the testator is free to create estate plans and execute documents for the express purpose of minimizing taxes. In this case, however, persons other than the testator sought to modify his will after death.

---

ing that, "[t]here are a number of aspects to a State court proceeding which can raise questions and cast doubt upon its bona fide, adversary character.... Taxpayers can achieve favorable but collusive results from State court proceed-

ings in which the Commissioner has not been made a party or which appear to have been pursued for the purpose of affecting a Federal tax liability.").

They did so not to effect his intent, but to avoid taxes. This is precisely the situation addressed by the Court in *Bosch.*

The facts described in Revenue Ruling 73–142 therefore are neither factually similar to the instant case, nor supportive of the executor's broader assertion that *Bosch* applies only to state court decisions not yet final.

### C.

Finally, contrary to the executor's assertion, affirming the tax court would not create a circuit split with the Fifth, Sixth, and Eighth Circuits. As the executor correctly notes, three circuits have held that the correct "measuring date" for determining whether a particular asset is considered part of a QTIP trust is the date of QTIP election, not the date of the testator's death. *See Estate of Spencer v. Commissioner of Internal Revenue,* 43 F.3d 226 (6th Cir.1995); *Estate of Robertson v. Commissioner of Internal Revenue,* 15 F.3d 779 (8th Cir.1994); *Estate of Clayton v. Commissioner of Internal Revenue,* 976 F.2d 1486 (5th Cir.1992).

We need not decide whether these cases are analogous to the case at hand, or whether we agree with their resolutions.[13] We note instead that because the tax court was not bound by the California probate court's reformation of Mr. Rapp's will and because under California law Mr. Rapp's will should not have been reformed, Mrs. Rapp cannot establish for federal estate tax purposes that she had a QTIP trust at any time, either at her husband's death or at the time of QTIP election. Therefore, we need not decide the

correct measuring date for QTIP election to resolve this case.

### IV.

The tax court properly held that it is not bound by the California probate court's reformation of Mr. Rapp's will as the decision was not affirmed by the California Supreme Court and is contrary to state law. For federal estate tax purposes, therefore, Mrs. Rapp at no time had a QTIP trust, and the deficiency is correct. The question of the proper measuring date is moot.

We AFFIRM and REMAND to the Tax Court for the limited purpose of determining total administrative expenses, including legal fees.[14]

---

**13.** In each of these cases, the testator's will created a QTIP trust, but left to the executor the decision regarding how much of the testator's property ultimately would be placed into the QTIP trust. The IRS challenged this "wait-and-see" approach, arguing that only property which had been designated as QTIP property as of the date of the testator's death could qualify for the tax deduction. *See, e.g., Estate of Spencer,* 43 F.3d at 231. The executor argued that when determining whether property meets the definition of QTIP, the date of QTIP election should be the correct measuring date. He argues that once the executor places certain property in trust and makes a QTIP election, that property cannot be taken from the surviving spouse until after his or her death. *Id.* at 230.

The court agreed with the executor holding that "[s]ince no property can be QTIP until the

election is made, the proper date to determine if property satisfies the requirement of § 2056(b)(7) is on the date of the election." *Id.* at 231. The court explicitly rejected the IRS' suggestion that property "satisfy every requirement for the QTIP counter-exception on the date of decedent's death." *Id.*

In any event, we note that these cases are distinguishable because they involve the correct measuring date for deciding whether property meets the QTIP definition where the only issue at stake is not whether the trust created was a QTIP trust, but how much of the testator's property could be placed within that trust.

**14.** Prior to this appeal, the parties stipulated that should the government prevail on appeal, the case would be remanded to the Tax Court for a proper determination of administrative and legal expenses.