**LAKEWOOD PLANTATION, INC., a South Carolina Corporation, Plaintiff,**

v.

**The UNITED STATES of America, Defendant.**

**Civ. A. No. 8153.**

United States District Court

D. South Carolina,

Florence Division.

Sept. 5, 1967.

Singleton & Singleton, Conway, S. C., Dusenbury & Dusenbury, Florence, S. C., for plaintiff.

Myron C. Baum, Dept. of Justice, Washington, D. C., Terrell L. Glenn, U. S. Atty., Columbia, S. C., for defendant.

## ORDER

SIMONS, District Judge.

This is an action for refund of federal income taxes and assessed interest for the calendar years 1954, 1955 and 1956 in the amounts of $5,889.70, $8,484.57 and $7,031.40 respectively. The case was called for jury trial on November 7, 1966. Prior to the selection of a jury, a conference between the court and counsel was held with Judge J. Robert Martin, Jr., presiding. Judge Martin ruled that the admissibility of a certain State Court decree affecting the taxes in question should be first decided before a trial on its merits. A hearing on this issue was thereafter held by the undersigned on November 28, 1966. In letters dated November 29, 1966 from Mr. Myron C. Baum of the Department of Justice and Richard G. Dusenbury, attorney for plaintiff dated January 4, 1967, counsel for the parties expressed the view that two cases pending in the United States Supreme Court, C. I. R. v. Estate of Bosch, 363 F.2d 1009 (2nd Cir. 1966), and Second Nat. Bank of New Haven v. United States, 351 F.2d 489 (2nd Cir. 1965), would be determinative of the issue herein, and it was suggested that this matter be held under advisement until the Supreme Court decided those two cases. On June 5, 1967 the Supreme Court handed down a combined opinion in the two cases, 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886, and thereafter the court requested and received supplemental briefs from the parties.

After a careful study of the evidence before the court, the briefs of counsel, and the opinion of the Supreme Court, it is concluded that the State Court decree and all evidence of the State Court proceedings with respect to the issues involved herein is inadmissible in the present suit. For the sake of clarity I will set forth my findings of fact and conclusions of law separately:

## FINDINGS OF FACT

By deed dated September 23, 1953, recorded February 26, 1954, V. F. Platt, Sr., transferred certain timber lands in fee to a newly formed corporation, Lakewood Plantation, Inc., (hereinafter referred to as "Lakewood"). Dr. Platt, Sr., was at that time virtually the sole owner of Lakewood. During the period of August 1954 until July 1957 certain sales of timber were made from Lakewood to various third parties. Each sale was consummated by an agreement bearing the signature of Dr. Platt, Sr., as president of the corporation. Other sales of timber were made, also by agreements which bore the signature of Dr. Platt, Sr., but purportedly as an individual. The income from these sales was received

by Dr. Platt, Sr., and reported on his personal tax return for subject years but was not reported as income to Lakewood. In 1957 the Internal Revenue Service made an investigation into the affairs of Lakewood and determined that the income received under these timber sale agreements was that of Lakewood, and not of Dr. Platt, Sr., personally.

Subsequent to this investigation, a correction deed dated October 4, 1953, recorded October 17, 1957 and purportedly signed by Dr. Platt, Sr., as president, and V. F. Platt, Jr., as secretary-treasurer of Lakewood, was executed wherein the timber on the transferred property was reserved to Dr. Platt, Sr., for 20 years. Nevertheless, it was uncontradicted that the deed was prepared in October 1957 and back dated to the date of an alleged special meeting of the shareholders of Lakewood. At that time a corporate resolution was adopted whereby all parties expressed their understanding that Dr. Platt, Sr., had always intended to reserve the timber on the property to himself for twenty years, and they agreed that a mistake had been made in the original deed.

In 1959, a civil action was commenced in the Court of Common Pleas for Horry County, South Carolina, by Dr. Platt, Sr., as an individual, against Lakewood Plantation, Inc., V. F. Platt, Jr., Mrs. Mary D. Platt and Mrs. Mary Emily Platt Jackson, to reform the original deed *ab initio* to reflect that a mutual mistake had been made therein; that Platt, Sr., had meant to reserve to himself for twenty years the timber and other mineral rights on the property. The government was not a party to the reformation suit. The matter was referred to Honorable Ralph Hoffman, the Master in Equity of Horry County. He held two hearings on the matter, October 30, 1959 and November 4, 1959. In his Master's Report dated March 1, 1960 and filed March 28, 1960, he recommended that plaintiff be granted the relief sought in his complaint, held that a mutual mistake had been made, and recommended that the deed of September 23, 1953 be

reformed as of that date, so as to reserve the timber and mineral rights to Dr. Platt, Sr. In a decree dated March 26, 1960, filed March 28, 1960, Honorable G. Badger Baker, Judge of the Twelfth Judicial Circuit, confirmed and approved the Master's Report and made it the order of the court. Judge Baker further ordered that reformation be effective as of the date of the original deed, that is, September 23, 1953. From the testimony before the court it is substantially undisputed that the state court proceeding was of a nonadversary nature. Mr. Platt, Jr., testified that there was no dispute between the parties as to the intended outcome of the state court proceedings. The Master in Equity, by his deposition, indicated that the end results of the proceedings were jointly sought by all parties.

## CONCLUSIONS OF LAW

Before the Supreme Court spoke in C. I. R. v. Bosch and Second Nat. Bank of New Haven v. United States, June 5, 1967, 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886, the rule in this circuit was that the government is bound by the local court's application of state law unless it shows that the decree in question was the product of a collusive or nonadversary proceeding. This test was stated by the Fourth Circuit speaking through Judge Bell in Pierpont's Estate v. C. I. R., 336 F.2d 277 (4th Cir. 1964):

"The law of a state, under Erie R. R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, [114 A.L.R. 1487] (1938), is what the judges of the appellate courts, in their collective wisdom, say it is. The same may not be said where the law of a state has been determined and applied by a *nisi prius* court, for its decisions, unlike those rendered by reviewing courts, do not lay down principles of law that must be followed as binding precedents. King v. Order of United Commercial Travelers of America, 333 U.S. 153, 68 S.Ct. 488, 92 L.Ed. 608 (1948). Nonetheless, the Supreme Court has declared that such decisions, having

settled property rights and interests between parties, must be followed by the federal courts in determining resultant tax liabilities—provided certain ground rules are followed. In essence those ground rules provide that the state court proceedings must not have been collusive—'*collusive in the sense that all the parties joined in a submission of the issues and sought a decision which would adversely affect the Government's right to additional * * * tax.*' Freuler v. Helvering, 291 U.S. 35, 45, 54 S.Ct. 308, 312, 78 L.Ed. 634 (1934)." (Emphasis added.)

It is obvious that under the *Pierpont* decision the state court determination here involved was the result of a nonadversary proceeding, and collusive in the tax sense, in that it was in fact nothing more than a consent decree. The testimony was to this effect and there was none to the contrary. Additionally the government was not a party.

Although the test of "collusiveness" as announced by the Fourth Circuit in *Pierpont,* supra, would exclude the admission of the decree herein, it is the view of this court that the *Pierpont* test has been rejected in favor of a much stronger view which the Supreme Court adopted in the *Bosch* and *Second National Bank of New Haven* cases. In *Bosch* the decree hinged on whether under New York law a particular document was effective as a release of a power of appointment. In *Bank of New Haven* the question involved in the state court litigation centered solely on the interpretation of a clause in decedent's Will and its effect on the application of the state death apportionment or proration statute. In both cases the correctness of the local adjudications depended solely on whether the proper state law had been applied to the undisputed facts. In contrast, the validity here of the decree of reformation issued by the Court of Common Pleas hinges primarily on a disputed factual question rather than the application or misapplication of South Carolina law. The government does not contest the fact

that the South Carolina law generally allows an instrument to be equitably reformed where there is a mutual mistake of fact among the parties. Therefore, in *Bosch* and *Bank of New Haven* the Supreme Court had only to determine what rule of state law was to be applied, the one chosen by the local court though erroneous, or the one set forth by the State Supreme Court. The Supreme Court recognized that three conflicting positions had emerged among the circuits:

"The first of those holds that ' * * * if the question at issue is fairly presented to the state court for its independent decision and is so decided by the court the resulting judgment if binding upon the parties under the state law is conclusive as to their property rights in the federal tax case * * *.' Gallagher v. Smith [supra], 223 F.2d 218, 225.

"The opposite view is expressed in Faulkerson's Estate v. United States, supra. This view seems to approach that of Erie R. Co. v. Tompkins, 304 U.S. 64 [58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487] (1938), in that the federal court will consider itself bound by the state court decree only after independent examination of the state law as determined by the highest court of the State. The Government urges that an intermediate position be adopted; it suggests that a state trial court adjudication is binding in such cases only when the judgment is the result of an adversary proceeding in the state court. Pierpont v. C. I. R., supra. Also see the dissent of Friendly, J., in Bosch, No. 673."

The Supreme Court having examined these positions adopted the view that regardless of the adversary nature of the state proceedings the federal court must make an independent review of the applicable state law under the principles of Erie R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487 (1938), and adjudicate the disputed property rights in accordance therewith.

The Supreme Court said:

"It follows here then, that when the application of a federal statute is involved, the decision of a state trial court as to an underlying issue of state law should *a fortiori* not be controlling. This is but an application of the rule of Erie R. Co. v. Tompkins, supra, where state law as announced by the highest court of the State is to be followed. This is not a diversity case but the same principle may be applied for the same reasons, viz., the underlying substantive rule involved is based on state law and the State's highest court is the best authority on its own law. If there be no decision by that court then federal authority must apply what it finds to be the state law after giving 'proper regard' to relevant rulings of other courts of the State. In this respect, it may be said to be, in effect, sitting as a state court. Bernhardt v. Polygraphic Co., 350 U.S. 198 [76 S.Ct. 273, 100 L.Ed. 199] (1955)."

The present matter therefore resolves itself into this issue: If the government in accordance with *Bank of New Haven* and *Bosch* is not bound by a state trial court decree of property rights based on a misapplication of state law, is it bound by such a decree based on erroneous findings of fact? This court takes the view that the state decree herein has no binding force on the government, without considering the question of whether it was collusive or non-collusive. If a state court decree is not binding on the government on erroneous findings of state law the resultant logic of the *Bank of New Haven* and the *Bosch* decisions is that by a like token the government is not bound by a decree based upon erroneous findings of fact. The mandate of *Bank of New Haven* and *Bosch* appears to be that federal tax liability should be litigated exclusively in the federal courts with proper regard to state law when property rights are disputed.

Therefore, this court concludes that the decree of the Court of Common Pleas of Horry County, South Carolina, of March 26, 1960 and the underlying testimony and evidence are inadmissible in this action for any purpose. The plaintiff should be required to present its evidence in this court in order to establish its right to recover. Accordingly, the case will be set over for trial on the merits.

And it is so ordered.