ESTATE OF MARY V. ROWAN, REID M. ROWAN, EXECUTOR, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1996–66.   Filed March 25, 1970.

*Howard B. Crittenden, Jr.*, for the petitioner.
*Martin A. Schainbaum*, for the respondent.

OPINION

We must determine, first, whether or not the decree rendered by the Superior Court of California in the 1962 probate proceeding is controlling for purposes of the Federal estate tax. If we conclude that it is not, then we must make our own independent determination as to what property interests were held by the decedent at the time of her death. Additionally, we must determine whether the estate must include a right held by the decedent at the time of her death to receive certain proceeds in respect of the sale of certain crops, even though these proceeds were taken into income by the executor. Finally, we must determine the extent to which funeral expenses are deductible from the estate of a California-domiciled decedent, whose estate consists largely of interests in community property.

## Issue 1

The petitioner argues that the decree of the State court is conclusive as to the ownership of property for Federal estate tax purposes. The respondent contends that the California decision in no way binds this Court, relying on *Commissioner* v. *Estate of Bosch*, 387 U.S. 456 (1967). We agree with the respondent.

*Bosch* involved the question of whether a State trial court determination of the effectiveness of the release of a general power of appointment was binding for Federal estate tax purposes. Its com-

panion case, *Second National Bank of New Haven, Executor* v. *United States*, decided by the Supreme Court at the same time, involved the question of whether a State trial court decision construing a provision of the decedent's will dealing with the allocation of Federal estate taxes among the beneficiaries was binding for Federal estate tax purposes. The Supreme Court concluded that a Federal court or agency in a Federal estate tax controversy is *not* conclusively bound by a State trial court adjudication of property rights or characterization of property interests when the United States is not a party to the proceeding.

The Supreme Court noted that the Commissioner was not a party to either of the State trial court proceedings, and concluded that those proceedings could not have the effect of res judicata, citing *Freuler* v. *Helvering*, 291 U.S. 35 (1934). The Court also found that the principle of collateral estoppel could not apply.

It said that where the application of a Federal statute is involved, the decision of a State trial court should not be controlling. The Supreme Court cited *Erie R. Co.* v. *Tompkins*, 304 U.S. 64 (1938), saying that the State law as announced by the highest court of the State is what should be followed by the Federal courts. Despite the fact that the cases before it were not based on diversity jurisdiction, as was *Erie*, the Supreme Court felt that the same principle applied. The Court would not use as a criterion the adverseness (or lack thereof) between the parties in the State litigation, feeling that such approach would lead to "uncertainty."

The petitioner seeks to show that *Bosch* is distinguishable from the case at hand because in neither *Bosch* nor its companion case did the State court proceeding involve a direct adjudication of property ownership. This difference does not warrant our reaching an opposite result here. The State court decisions considered by the Supreme Court in *Bosch* substantially affected property interests—in *Bosch*, the New York court determined that Mrs. Bosch had a general power of appointment over the trust property rather than a more limited special power; and in *Second National Bank*, the Connecticut court decision determined who bore the burden of the Federal estate taxes.

Perhaps the petitioner is trying to show that the case at bar involves a State court determination of fact, whereas the State court proceedings in *Bosch* and *Second National Bank* involved issues of State law. It is not clear that there is such a difference between the cases. The Superior Court of California was called upon to interpret the 1957 agreement between the parties and to decide its effect. Although we know very little about the precise problems that the court had to consider and little about how it reached its decision,

its decision may have involved such legal questions as how transfers of certain property interests can be made contractually between husband and wife, and how jointly owned property can be effectively transmuted into community property. In any event, we feel that even if the present controversy involved a question of fact and not of law, the *Bosch* doctrine still would be applicable. *Lakewood Plantation, Inc. V. United States*, 272 F. Supp. 290, 293-294 (D. S.C. 1967); *Sappington* v. *United States*, an unreported case (D. Md. 1968, 21 A.F.T.R. 2d 1619, 68-1 U.S.T.C. par. 12,514), affd. 408 F. 2d 817 (C.A. 4, 1969), rehearing denied per curiam 408 F. 2d 820 (C.A. 4, 1969).

The petitioner has argued vigorously that the California State court proceeding may be likened to a contest between two strangers over the ownership of a parcel of land, in which the State court ultimately decides that one contestant, and not the other, is the rightful owner. The analogy is not appropriate. The State court proceeding was not merely a contest between two private persons as to who owned property. If the State court decree is given effect, substantial property will pass from the decedent who was the apparent owner to Mr. Rowan without the payment of an estate tax so that the respondent has an interest in the transaction. Furthermore, there are a number of aspects to the State court proceeding which raise questions and cast doubt upon its bona fide, adversary character. There is no indication that the decedent's children, who had an interest in the proceeding, were given notice thereof, and the record of the proceeding indicates that they did not make an appearance. Although the State court decree reduced the property held in trust for the children, they might actually benefit from it, if it were given effect for Federal estate tax purposes, since the tax savings might result in more property eventually becoming available to them. Furthermore, it is not at all clear how the State court reached its decision. We have a transcript of the hearing, although there is a question as to whether it is a complete transcript. It indicates that at the outset, Judge Jacka appeared to believe that the 1957 community property agreement applied to all the property of Mr. and Mrs. Rowan, except for the ranch in Madera County. In the transcript that we have, the petitioner offered no evidence to establish that the community property agreement was to affect only Mrs. Rowan's property interests. On the record before us, there is no explanation of how and why the State court reached its decision. In other words, the evidence that has been presented to us does not demonstrate that the proceeding before the Superior Court of California was bona fide, adversary litigation to determine the own-

ership of property, and under these circumstances, we have concluded that it should be disregarded in determining the property owned by the decedent for purposes of the Federal estate tax.

## Issue 2

In *Commissioner* v. *Estate of Bosch, supra,* it was held we should determine property rights according to the law of the appropriate State as expressed by its highest court. However, law cannot be applied in the abstract; we must have presented the facts to which the law is to be applied. The petitioner, who requests us to redetermine the deficiency determined by the respondent, has the burden of proving error in that determination. *Welch* v. *Helvering,* 290 U.S. 111 (1933); *Barnes* v. *Commissioner,* 408 F. 2d 65 (C.A. 7, 1969), affirming a Memorandum Opinion of this Court, certiorari denied 396 U.S. 836 (1969); Rule 32, Tax Court Rules of Practice. To carry that burden, the petitioner must prove the facts which support his position in this case and which show error in the respondent's determination.

The petitioner alleges that the 1957 community property agreement applied to the decedent's property only, thereby giving Mr. Rowan an additional interest in all of the property except the ranch. However, the 1957 agreement was not offered in evidence— we were told that it is lost; but no effort was made to prove its contents in any other manner. Although the petitioner alleges that it applied only to the decedent's interests in properties, Mr. Rowan, at one point in his testimony, indicated that it applied to all their properties. There was no evidence offered to support the contention that Mr. Rowan individually owned a substantial portion of the properties. There was some evidence as to the properties which the decedent acquired from her parents. Clearly, in the light of this record, we cannot find what the 1957 agreement provided and what property was owned by Mr. Rowan as his separate property. To ask us to make such findings is to ask us to indulge in speculation. Although the petition appeared to challenge the respondent's valuations of certain property interests included in the estate, the petitioner introduced no evidence with respect to such valuations. The petitioner has wholly failed to carry his burden of proof, and accordingly, we sustain the respondent's determination with respect to the ownership and valuation of the property, except insofar as it has been modified by stipulation of the parties.

With respect to the insurance policies, the petitioner contends that under the 1957 agreement with the decedent, she alone did not have the right to surrender the policies, but no evidence has been

offered to support this contention. The respondent determined that the policies were includable in the estate as follows: Northwestern Mutual Life Insurance Co. policy, $4,936.54; New York Life Insurance Co. policy, $4,396. However, the respondent has conceded in his brief that if we determine that the property owned by Mr. and Mrs. Rowan at the time of her death was community property, except for the ranch in Madera County, then the life insurance policies should also be considered as community property, with the decedent's interest valued at $2,468.27 for the Northwestern policy and $2,198 for the New York Life policy. In view of our holding with respect to the other property of the decedent, we adopt the concession of the respondent and hold that the lesser amounts are to be included in the estate.

*Issue 3*

It is undisputed that the decedent's share of the crops produced by the Madera County ranch was sold and delivered prior to her death, and that the proceeds from such sale were received by Mr. Rowan as executor in 1962. It follows that at the time of the decedent's death, she possessed a contractual right to receive the payment. It is settled that such a right to receive payment is considered as property owned by the decedent and includable in the estate under section 2033, I.R.C. 1954.[1] *Estate of Arthur H. Hull*, 38 T.C. 512, 522 (1962), reversed on other grounds 325 F. 2d 367 (C.A. 3, 1963); see also *Estate of Hattie L. McNary*, 47 T.C. 467, 470 (1967), and *Estate of Abraham L. Buckwalter*, 46 T.C. 805, 815 (1966).

The petitioner appears to argue that this property right of the decedent is not includable in her estate because Mr. Rowan subsequently reported as income the proceeds received by him as executor. However, the petitioner has shown us no reason to exclude this particular property interest from the broad scope of section 2033, and indeed we know of none. Rather, it seems clear that Congress did intend this type of "income in respect of a decedent" to be included in the estate. Section 691(c), a relief provision, allows the amount taken into income to be reduced by the amount of estate tax which is attributable to the inclusion of that item in the gross estate. Furthermore, it is no unusual burden for the ranch proceeds to be subject to both income and estate taxes. Had the decedent actually received these payments immediately before her death, they would have been included in her income for her last taxable year, and the amount remaining after the payment of income taxes would be included in her gross taxable estate.

---

[1] All statutory references are to the Internal Revenue Code of 1954, unless otherwise specified.

The respondent has determined that the includable value of this property right should be the same figure as the sum which was in fact later received, $1,243.93. The petitioner has suggested that the amount to be paid for the produce had not been exactly determined at the time of the decedent's death. However, no evidence has been introduced to establish that the proper includable value is something other than what the respondent has determined. That determination is therefore sustained.

### Issue 4

The final issue for our determination concerns the extent to which the expenses duly incurred and paid in connection with the decedent's funeral are deductible from the gross estate. Section 2053(a)(1) allows the estate to take a deduction for funeral expenses, but only to the extent "allowable by the laws of the jurisdiction * * * under which the estate is being administered." Section 20.2053–2, Estate Tax Regs., limits the deduction for funeral expenses to that which "would be properly allowable out of property subject to claims under the laws of the local jurisdiction." Clearly, it is necessary to look to California law.

The respondent contends that under California law, the entire community property including the survivor's interest therein, in addition to the decedent's separate property, is chargeable with the funeral expenses of the decedent. Therefore, that portion of the funeral expenses which is allocable to the survivor's one-half interest in the community property is not deductible from the decedent's estate for Federal estate tax purposes.

The petitioner argues for full deductibility, based primarily on his interpretation of section 951.1 of the California Probate Code, which states:

Funeral expenses * * * shall be deemed debts primarily payable out of the estate of the deceased spouse, whether or not the surviving spouse is financially able to pay such expenses and whether or not the surviving spouse or any other person is also liable therefor.

However, an examination of the California cases shows that despite this statute, the courts have held that in the case of community property, a portion of the funeral expenses must be allocated to the surviving spouse's interest in the community property and such portion is not chargeable against the estate. *Pfeiffer* v. *United States*, 310 F. Supp. 392 (1969); *Estate of Henry James Davis*, 51 T.C. 361 (1968); *Estate of Hugh C. Hutson*, 49 T.C. 495 (1968); Leydorf, "Deductibility of Funeral Expenses—Time for a Change in California," August 1969 L.A.B.Bull. 426. The portion of the funeral

expenses which is deductible from the estate is calculated by multiplying the amount of the funeral expenses by a fraction of which the numerator is the value of the separate property of the decedent plus one-half of the value of the community property, and of which the denominator is the value of the separate property of the decedent plus the entire value of the community property. This fraction appears to be the calculation used by the respondent in his determination of deficiency, and if so, we sustain the determination.

*Decision will be entered under Rule 50.*