T.C. Memo. 1996-516


UNITED STATES TAX COURT


ESTATE OF JOHN KENLY, DECEASED,
BETTY B. KENLY, PERSONAL REPRESENTATIVE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 5107-95.                    Filed November 21, 1996.


        R determined a deficiency in estate tax on the
theory that certain property titled in decedent's name
was decedent's separately owned property, only one-
third of which passed to decedent's wife.  P contends
that no deficiency in estate tax exists because that
property was community property, and decedent's share
passed to decedent's wife.
        <u>Held</u>:  The property in issue was decedent's
separate property.


<u>Gregory A. Robinson</u> and <u>Donald W. Harris</u>, for petitioner.

<u>Katherine Holmes Ankeny</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

HALPERN, Judge:  Respondent has determined a deficiency in Federal estate tax of $1,837,266 and an accuracy related penalty of $367,453.  Respondent's determination of a deficiency relates primarily to her determination that certain property was the separate property of decedent John Kenly (decedent) at the time of his death and was not community property.  As a result of concessions made by respondent, the only issue we must decide is whether the property in question was separate property or community property.  Unless otherwise noted, all section references are to the Internal Revenue Code in effect at the time of decedent's death, and all Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some facts have been stipulated and are so found.  The stipulations of fact filed by the parties and accompanying exhibits are incorporated herein by this reference.

In the petition, petitioner Betty B. Kenly (petitioner) represents that her address is in Meadview, Arizona.

Decedent died intestate on December 23, 1990.  At the time of his death, decedent was married to petitioner.  Decedent and petitioner had been married for 35 years, and they had resided in Arizona for all of that time.  Decedent was also survived by two sons, Mark and Rodney Kenly, and by several grandchildren.

The New Mexico Ranch

In 1958, Frank Kenly, decedent's father, bought a ranch in New Mexico (the New Mexico ranch). Decedent did not pay any money toward the purchase of the New Mexico ranch. By statutory warranty deed recorded in 1958, the New Mexico ranch was granted to "FRANK KENLY and JOHN KENLY, as joint tenants". The recorded statutory warranty deed included the following statement, which was signed by Frank Kenly and decedent:

STATEMENT OF INTENTION TO CREATE JOINT TENANCY

FRANK KENLY and JOHN KENLY, hereby state that the effect of the foregoing deed has been explained to the [sic], and they hereby declare that it is their wish and intention that they take the property described in the deed as joint tenants with the right of survivorship and not as community property nor as tenants in common.

In 1971, Frank Kenly signed and recorded an affidavit stating that he and decedent were the owners of the New Mexico ranch. According to an exchange agreement signed by Frank Kenly and decedent in 1974, decedent owned an undivided one-half interest in the New Mexico ranch.

The Divorce Proceeding

In February 1967, petitioner initiated an action for divorce from decedent (the action) by filing a complaint (the complaint) in an Arizona court (the divorce court). Petitioner was represented by counsel. Petitioner filed a financial statement with the divorce court (the financial statement). The financial statement contained a list of several properties that petitioner

claimed were community property. The financial statement failed to list the New Mexico ranch as community property. In the complaint, petitioner requested that the divorce court order decedent to file an inventory of all community property. The divorce court so ordered. In June 1967, decedent filed an answer to the complaint, which included a list of community property. That list did not include the New Mexico ranch. Petitioner made no objection to that omission. The action was twice set for trial. The action was not tried and was dismissed in February 1969.

Exchange of Interest in New Mexico Ranch for Interest in Dunlap Property

In 1939, Frank Kenly and decedent's mother, Zona Kenly, bought property near Dunlap Road in Phoenix, Arizona (the Dunlap property). In 1974, decedent exchanged his interest in the New Mexico property for Frank Kenly's interest in the Dunlap property. The intent of decedent and Frank Kenly was that Frank Kenly divest himself of his interest in the Dunlap property and decedent divest himself of his interest in the New Mexico property. Attorney John Hughes represented decedent in that exchange. In a statutory quitclaim deed executed in 1974, Frank Kenly conveyed his interest in the Dunlap property to decedent. In a replacement deed signed in 1975, Frank Kenly again quitclaimed his interest in the Dunlap property to decedent.

In 1975, to insure that decedent had received all of Frank Kenly's interest in the Dunlap property, Frank Kenly conveyed his interest in an additional strip of land on the border of the Dunlap property. That conveyance was evidenced by a quitclaim deed that identified decedent as the grantee. On May 3, 1979, decedent explained in an affidavit that "since March of 1975, the date on which the interest of FRANK KENLY was conveyed to your affiant, your affiant and his mother ZONA KENLY have paid the taxes on and have been in open and adverse possession of the * * * [additional strip of land]." In 1979, the former owners of the Dunlap property executed a quitclaim deed to correct title to the Dunlap property. That quitclaim deed identified the donees as decedent and Zona Kenly.

In 1979, Zona Kenly and decedent sold a portion of the Dunlap property. The warranty deed that evidenced the sale identified the sellers as "ZONA KENLY, an unmarried woman, and JOHN KENLY husband of Betty Blair Kenly dealing with his sole and separate property".

## Exchange of 40 Acres in Dunlap Property for Windmill Ranch

In 1980, Zona Kenly and decedent exchanged a 40-acre parcel of the Dunlap property (the 40-acre parcel) for property in Kingman, Arizona (the Windmill Ranch). In addition to that property, the former owners of the Windmill Ranch assigned to Zona Kenly and decedent their rights under a lease (the lease). John Hughes represented decedent in the exchange.

The title report prepared in connection with the exchange lists the insureds as Zona Kenly and decedent and states that the interest insured under the policy is "a fee simple vested in ZONA KENLY, a widow, and JOHN KENLY, a married man, as his sole and separate property."  The sellers of the Windmill Ranch assigned the lease to "Zona Kenly, a divorced woman, and John Kenly, as his sole and separate property".  According to the warranty deed for the 40-acre parcel, the sellers were "Zona Kenly, a widow and John Kenly, a married man dealing with his sole and separate property."  The sellers of the Windmill Ranch, by warranty deed, conveyed title to that property to "ZONA KENLY, a widow and JOHN KENLY, a married man as his sole and separate property".

On May 3, 1979, petitioner had signed and recorded a disclaimer deed with respect to the 40-acre parcel.  That deed referred to petitioner as the undersigned and decedent as the spouse.  It stated:

1.   The spouse has acquired title to * * * [description of the 40-acre parcel].

2.   The property above described is the sole and separate property of the spouse having been purchased with the separate funds of the spouse.

3.   The undersigned has no past or present right, title, interest, claim or lien of any kind or nature whatsoever in, to or against said property.

4.   This instrument is executed not for the purpose of making a gift to the spouse, but solely for the purpose of clearly showing of

record that the undersigned has and claims no interest in and to said property.

NOW THEREFORE, in consideration of the premises, the undersigned does hereby disclaim, remise, release and quit-claim unto the spouse and to the heirs and assigns of said spouse forever, all right, title, interest, claim and demand which the undersigned might appear to have in and to the above described property.

## Exchange of 80 Acres in Dunlap Property for Portion of Bard Property

In November 1981, Zona Kenly and decedent exchanged an 80-acre parcel of the Dunlap property (the 80-acre parcel) for 794 acres of property in Bard, California (the 794-acre Bard parcel). (In this triangular exchange, Phoenix Commerce Center Venture (Venture) bought the 794-acre Bard parcel from Mr. Conley, and Venture exchanged it with Zona Kenly and decedent for the 80-acre parcel of the Dunlap property.) The sales price for the 80-acre parcel was $5,750,000. According to the warranty deed for the 80-acre parcel, the sellers were "ZONA KENLY, a divorced woman, and JOHN KENLY, a married man dealing with his sole and separate property". According to the grant deed for the 794-acre Bard parcel, the buyers were "ZONA KENLY, a divorced woman, and JOHN KENLY, a married man dealing with his sole and separate property."

The escrow instructions involved in the exchange of the 80-acre parcel and the 794-acre Bard parcel identified the sellers of the 80-acre parcel and the purchasers of the 794-acre Bard parcel as "ZONA KENLY, a divorced woman, and JOHN KENLY, a

married man, dealing with his sole and separate property".  The title insurance policy covering the 794-acre Bard parcel identified the owners of that parcel as "ZONA KENLY, a divorced woman, and JOHN KENLY, a married man dealing with his sole and separate property".  In November 1981, petitioner signed a quitclaim deed to decedent with respect to the 794-acre Bard parcel.  In 1983, petitioner signed a quitclaim deed with respect to the 80-acre parcel.

In 1984, Zona Kenly and decedent agreed to lease the 794-acre Bard parcel to Tanimura & Antle, Inc. (Tanimura & Antle), from January 1, 1985, to June 30, 1988, for a total rent of $754,600.  According to the lease agreement, the lessors were "JOHN KENLY and ZONA KENLY, dealing with their sole and separate property".

Purchase of Additional Parcel of Bard Property

In 1986, Zona Kenly and decedent bought an additional 125 acres of property in Bard, California (the 125-acre Bard parcel; the 794-acre Bard parcel and the 125-acre Bard parcel, together, will be referred to as the Bard property), for $440,000.  Before completing the purchase of the 125-acre Bard parcel, decedent and Zona Kenly made a counteroffer to the sellers of that parcel.  That counteroffer identified the offerors to include "John Kenly, husband of Betty Kenly, * * * [dealing with] his sole and separate property, and Zona Kenly, a widow".

According to the terms of that sale, the buyers made a downpayment of $270,866.50 and gave a promissory note for $149,840. Zona Kenly made the downpayment with a check drawn on her checking account in the amount of $270,866.50. Zona Kenly and decedent signed a promissory note for $149,840, for the balance of the purchase price. The escrow instructions relating to the purchase of the 125-acre Bard parcel identified the buyers of the 125-acre Bard parcel as decedent and Zona Kenly, stated that Zona Kenly was a widow, and stated that decedent was dealing with his sole and separate property. The sellers of the 125-acre Bard parcel, by warranty deed, conveyed title to that property to "JOHN KENLY husband of Betty Kenly as his sole and separate property and; [sic] ZONA KENLY, a widow".

In 1986, petitioner signed and recorded a disclaimer deed with respect to the 125-acre Bard parcel. That deed referred to petitioner as the undersigned and decedent as the spouse, and stated:

1.   The spouse has acquired title to * * * [description of the 125-acre Bard parcel].

2.   The property above-described is the sole and separate property of the spouse having been purchased with the separate funds of the spouse.

3.   The undersigned has no past or present right, title, interest, claim or lien of any kind or nature whatsoever in, to or against said property.

4.   This instrument is executed not for the purpose of making a gift to the spouse, but

solely for the purpose of clearly showing of record that the undersigned has and claims no interest in and to said property.

NOW THEREFORE, in consideration of the premises, the undersigned does hereby disclaim, remise, release and quitclaim unto the spouse and to the heirs and assigns of said spouse forever, all right, title, interest, claim and demand which the undersigned might appear to have in and to the above described property.

\* \* \* \* \* \* \*

NOTE:  The parties are cautioned that by completing and executing this document, legal rights, duties and obligations are created.  By signing, the parties acknowledge that they have been advised to seek and obtain independent legal counsel to all matters contained in the within document prior to signing same and that said parties have obtained advice or choose to proceed without same.

In 1987, Zona Kenly and decedent executed a new lease agreement with Tanimura & Antle, leasing the Bard property from January 1, 1988, to June 30, 1991, for a total rent of $907,525. According to the lease agreement, the lessors were "JOHN KENLY and ZONA KENLY, c/o Windmill Ranch, Box 33 Sandy Route, Kingman, Arizona 86401, dealing with their sole and separate property."

Decedent's Acquisition of Zona's Interest in Bard Property

Decedent and Zona Kenly were partners in the Windmill Ranch Partnership (the partnership).  The partnership managed the Bard property and the Windmill Ranch.  In November 1990, decedent and Zona Kenly received a proposal to purchase the Bard property and the Windmill Ranch.  Zona Kenly did not want to receive cash but, instead, wanted to receive a substitute property.  As a result, on December 20, 1990, by a document titled "Memorandum Agreement

of Reduction of Partnership Interest", Zona reduced her interest in the partnership to 1 percent in consideration for receiving the Windmill Ranch. The intended results were that decedent would own 99 percent of the Bard property and Zona would own 100 percent of the Windmill Ranch.

According to the warranty deed granting the Windmill Ranch to Zona Kenly, the grantors were "Windmill Ranch Partnership and John Kenly, husband of Betty Kenly, dealing with his sole and separate property".

Decedent died before he could complete a sale of the Bard property.

## California Ancillary Probate Proceeding

Decedent died intestate. Michael Hughes was attorney for petitioner in her capacity as personal representative of decedent. Michael Hughes and his father, attorney John Hughes, advised decedent's children, Rodney Kenly and Mark Kenly, that the Bard property was community property. In January 1991, Rodney Kenly and Mark Kenly each renounced any intestate share in decedent's estate. The documents evidencing their renunciation were prepared by Michael Hughes.

By letter dated March 4, 1991, Phillip J. Krum, Jr., a California attorney, advised Michael Hughes of certain options concerning the disposition of the Bard property. In pertinent part, the letter stated:

Under our Corporations Code §15026 a partnership interest is classified as "personal property." While it is sometimes necessary to probate personal property belonging to a decedent who was not domiciled in California, California will apply the law of the decedent's domicile for purposes of determining intestate succession. Accordingly if we take the view that title to the property in Bard was really held by the partnership (rather than in tenancy-in-common), California will apply Arizona law. As I understand it from our earlier conversation, then the decedent's children would in effect take 1/4 of decedent's partnership interest.

On the other hand, if we can take the position that the property was not at the time of the decedent's death truly a partnership asset, but was held (as title reflects) by the decedent as tenants-in-common with his mother, then California law will apply, and if the decedent's interest is community, that interest will pass entirely to the spouse. * * *

On April 8, 1991, petitioner filed a spousal property petition in the Superior Court of California, County of Imperial (the California court), averring that the Bard property was community property. The petition also requested the California court (1) to determine that a one-half interest in the Bard property passed from decedent to petitioner by intestate succession and (2) to confirm that the remaining one-half interest was petitioner's in her own right. A hearing was scheduled for April 26, 1991. Notice of hearing was given to petitioner and to decedent's two sons, Mark and Rodney Kenly. No notice was given to any of decedent's grandchildren. A hearing was held on April 26, 1991. No one asked to be heard, and no one opposed the petition. The petition was granted, the judge

finding that petitioner was the surviving spouse and that "the described property passes to her."[1]

The Estate Tax Return

Petitioner included one-half of the value of the Bard property in the gross estate as decedent's interest in that property. Petitioner then deducted the value of that interest as property passing to decedent's spouse. Thus, none of the value of the Bard property was included in decedent's taxable estate.

OPINION

I. Introduction

Decedent died intestate on December 23, 1990, survived by his wife (petitioner), two sons, and grandchildren. Decedent possessed an interest in certain California real property (the

---

[1] A full transcript of the hearing is as follows:

THE COURT: John Kenly.

MR. KRUM: That matter is ready, your honor.

THE COURT: Is there anyone who wishes to be heard in the petition of Betty Kenly to survive under spousal property petition to the property of her husband, John Kenly?

MR. KRUM: Your honor, for the record, perhaps the court will note that Betty Kenly is present today, as is Mark Kenly, the son.

THE COURT: Anyone who wishes to oppose this petition? The record will show no appearances. Everything appears to be in order. The petition is granted. The court finds that Betty Kenly is the surviving spouse and the described property passes to her.

MR. KRUM: Thank you, your honor.

Bard property) at the time of his death.[2]  We must decide

whether, at the time of decedent's death, the interest in the

Bard property was decedent's separate property or community

property.

II.  Relevant Law

    A.  State Law

We look to State law to determine property rights.  Estate

of Rowan v. Commissioner, 54 T.C. 633, 639 (1970) (citing

Commissioner v. Estate of Bosch, 387 U.S. 456 (1967)).  "The

realty of a decedent is disposed of in accordance with the laws

of the state in which it is located."  In re Herbert's Estate,

109 P.2d 729 (Cal. Ct. App. 1941); cf. Cal. Civ. Code sec. 755

(West 1982) ("Real property within this State is governed by the

law of this State, except where the title is in the United

States.").  The Bard property is located in California, and,

consequently, we must look to California law to determine how it

passed on decedent's death.  If the Bard property was decedent's

separate property, then one-third of his interest in that

property passed to petitioner under the intestate succession law

---

[2]     The record is ambiguous as to whether, at the time of
decedent's death, the Bard property was owned by the Windmill
Ranch partnership (the partnership).  Petitioner clearly believes
that the Bard property was not owned by the partnership, although
she has not proposed a finding to that effect.  At trial,
respondent's counsel stated that she had no knowledge that the
Bard property had ever been deeded to the partnership.  We shall
assume, without deciding, that the Bard property was not owned by
the partnership.

of the State of California. Cal. Prob. Code sec. 6401(c)(2) (West 1981). If the Bard property was community property, then petitioner owned one-half of the property in her own right and received the other half pursuant to the California intestate succession law. Cal. Prob. Code sec. 100 (West 1981) ("Upon the death of a married person, one-half of the community property belongs to the surviving spouse and the other half belongs to the decedent."); Cal. Prob. Code sec. 6401(a) (West 1981) ("As to community property, the intestate share of the surviving spouse is the one-half of the community property that belongs to the decedent under Section 100."); see also In re Estates of Spear, 845 P.2d 491, 493-494 (Ariz. Ct. App. 1992) (surviving spouse owns one-half of the community property outright, and this one-half ownership interest is not a part of the decedent spouse's estate).

In relevant part, the California Probate Code, section 28(b) and (c) (West 1981), states that the term "community property" means:

> (b) All property wherever situated, and all real property situated in this state, heretofore * * * acquired during the marriage by a married person while domiciled elsewhere, that is community property * * * under the laws of the place where the acquiring spouse was domiciled at the time of its acquisition.

> (c) * * * all real property situated in this state * * * acquired during the marriage by a married person in exchange for real * * * property, wherever situated, that is community property * * * under the laws of the place where the acquiring spouse was

domiciled at the time the property so exchanged was acquired.

Decedent was domiciled in Arizona at all times here relevant, so that we must look to Arizona law to determine the applicable community property law.  If the Bard property was community property under the laws of Arizona, or was acquired in exchange for property that was community property under the laws of Arizona, then it is community property under the laws of California.  We must ascertain the law of Arizona as the highest court of the State would apply it.  Commissioner v. Estate of Bosch, 387 U.S. 456, 465 (1967).

Under Arizona law, property acquires its character as community or separate property at the time of its acquisition.  Potthoff v. Potthoff, 627 P.2d 708, 712 (Ariz. Ct. App. 1981); Bender v. Bender, 597 P.2d 993, 995 (Ariz. Ct. App. 1979); Myrland v. Myrland, 508 P.2d 757, 762 (Ariz. Ct. App. 1973).  Property received by one spouse as a gift is the separate property of that spouse.  Ariz. Rev. Stat. Ann. sec. 25-211 (1991).  That ownership does not change except by operation of law or through an agreement between husband and wife.  Potthoff v. Potthoff, 627 P.2d at 712.  In certain cases, the character of a spouse's separate property may be changed to community property "if the circumstances clearly demonstrate that [that] * * * spouse intended to effect a change in the status of his separate property."  Moser v. Moser, 572 P.2d 446, 448 (Ariz. Ct. App.

1977) (citing Beam v. Bank of America, 490 P.2d 257 (Cal. 1971)). Where one spouse exchanges his separate property for new property, the new property remains his separate property. Nace v. Nace, 448 P.2d 76, 79 (Ariz. 1968) ("Property purchased during marriage with separate property remains such.").

B. The Federal Estate Tax

The Federal estate tax law requires that there shall be included in the value of the gross estate the value of all property to the extent of the decedent's interest therein at the time of his death. Sec. 2033. In determining the value of the taxable estate, there is allowed a deduction for the value of any interest in property that is included in the gross estate and that passes from the decedent to the surviving spouse. Sec. 2056(a). One-half of the value of property held in community (that being the decedent's interest in the property) is includable in a decedent's gross estate. Ahmanson Foundation v. United States, 674 F.2d 761, 773 (9th Cir. 1981) ("The surviving spouse's [one-half interest in] community property is excluded from the gross estate".); see also Estate of Lepoutre v. Commissioner, 62 T.C. 84, 88 (1974); Estate of Vandenhoeck v. Commissioner, 4 T.C. 125, 135-136 (1944). Property passing to the surviving spouse by intestate succession qualifies for the deduction provided for in section 2056(a) (the marital deduction). Sec. 20.2056(c)-1(a)(5), Estate Tax Regs. Thus, if we find that the Bard property was decedent's separate property,

the full value of that property is includable in the gross estate, and the marital deduction equals one-third.  If we find that the Bard property was community property, then only one-half of the value of that property is includable in the gross estate, and the marital deduction equals that one-half.  Petitioner bears the burden of proof.  Rule 142(a).

III.  Analysis

A.  Introduction

The parties agree that decedent's ownership of the Bard property can, at least in major part, be traced back to decedent's ownership of an interest in the New Mexico ranch.[3]  We must decide whether the New Mexico ranch was community property or separate property in decedent's hands at the time he acquired his interest therein.  If decedent acquired his interest in the New Mexico ranch as separate property, we must determine whether

---

[3]     On brief, petitioner states:  "The evidence shows that the Bard Ranch property was acquired in exchange for Dunlap property in Arizona which was exchanged for the * * * [New Mexico] Ranch property in New Mexico."  Petitioner ignores the fact that 125 acres of the Bard property was acquired by purchase.  Petitioner has neither averred nor proposed as a finding of fact that any of the purchase price of that 125 acres was paid with community funds.  Indeed, we have found that a substantial portion of the purchase price was paid by decedent's mother.  That, of course, suggests a gift to decedent.  We assume from petitioner's failure to plead or propose facts consistent with decedent's purchase of his interest in the property with community funds that petitioner relies solely on the argument that, although not initially community property, decedent's interest in the 125 acre tract subsequently became community property.  If petitioner intends any other argument, she has failed either to propose a factual predicate therefor or to state such argument.  We shall consider only the argument petitioner made.

it was converted to community property. If the New Mexico ranch was not converted to community property, we must determine whether any of the property for which it was exchanged (or the 125-acre Bard parcel[4]) was converted to community property. Petitioner argues for any alternative that would make the Bard property community property.

B. California Ancillary Probate Proceeding

Following decedent's death, petitioner filed a spousal property petition in the Superior Court of California, County of Imperial (the California court), averring that the Bard Property was community property. Petitioner also requested the California court (1) to determine that a one-half interest in the Bard property passed from decedent to petitioner by intestate succession and (2) to confirm that the remaining one-half property interest was petitioner's in her own right. The petition was granted, the judge finding that petitioner was the surviving spouse and that "the described property passes to her."

Petitioner relies on the determinations of the California court to support her argument that the Bard property was community property. Respondent argues that the determinations of the California court do not bind this Court, relying on Commissioner v. Estate of Bosch, 387 U.S. 456 (1967). We agree with respondent.

---

[4] See supra note 3.

The lesson of <u>Commissioner v. Estate of Bosch</u>, 387 U.S. 456 (1967), is that, respondent, having been absent from the State court proceeding that established rights to the decedent's property, is entitled to her day in Federal court, unless she could not there prevail.  The California court did not explain the basis of its determinations[5]; we do not know whether the California court was determining a question of California law as to community property or was relying on the unopposed averments made by petitioner that the Bard property was community property. Therefore, we cannot rule out that respondent, had she been present in the California court, would have prevailed in opposing petitioner's claim that the Bard property was community property. The situation here is not unlike the situation we faced in <u>Estate of Rowan v. Commissioner</u>, 54 T.C. 633, 638 (1970) (<u>Bosch</u> applied; State court decision concerning ownership of property of decedent (including community property) not determinative:  "On the record before us, there is no explanation of how and why the State court reached its decision.").  We conclude that we are not bound by the determinations of the California court, and we will not follow those determinations.

C.  <u>Decedent's Acquisition of an Interest in the New Mexico Ranch</u>

Decedent acquired an interest in the New Mexico ranch when that property was bought and paid for by decedent's father.  The

---

[5]    See <u>supra</u> note 1.

property was granted to decedent and his father as joint tenants, and petitioner was not a grantee. Decedent paid nothing towards the purchase price of the property, which suggests that he received his interest in the property as a gift from his father. Petitioner testified that she and decedent worked at the New Mexico ranch for five or six summers after the ranch was acquired by decedent and his father. She testified that she did not consider that work as liquidating a debt to decedent's father for decedent's interest in the property. She testified that "probably nothing" would have happened if she and decedent had not worked at the property. Petitioner has failed to prove that decedent's father did not make a gift to decedent (and to decedent alone) of decedent's interest in the New Mexico ranch. Section 25-211 of Arizona Revised Statutes, Annotated, provides: "All property acquired by either husband or wife during the marriage, except that which is acquired by gift, devise or descent, is the community property of the husband and wife." Implicitly, property acquired by gift to one spouse alone is the separate property of that spouse. Decedent's interest in the New Mexico property was acquired by gift to decedent and, for that reason, was not, upon its acquisition, community property.

D. Decedent did not Change the Character of his Interest in the New Mexico Property or any of the Successor Properties to Community Property

Decedent's ownership of the Bard property can, for the most part, be traced through a series of exchanges to his ownership of

an interest in the New Mexico ranch.  (Hereafter, the Bard property and its predecessors, the Windmill Ranch and the Dunlap property, but not the New Mexico ranch, will be referred to as the "successor properties".)  We have determined that, upon acquisition, decedent's interest in the New Mexico ranch was his separate property.  Under Arizona law, when one spouse uses separate property to purchase new property, the new property remains separate property.  Nace v. Nace, 448 P.2d at 79.  Thus, unless the character of decedent's interest in either the New Mexico property or any of the successor properties changed to a community interest, the Bard property was decedent's separate property.

Petitioner has failed to show such a change.  The various deeds and other documents set forth or discussed in our findings of fact speak against a change.  John Hughes, who represented decedent and petitioner in certain of the transactions here involved, testified that decedent had told him that decedent's interests in the New Mexico ranch and Dunlap property were community property.  On the other hand, Robert Harman, a real estate broker who brokered the exchange of the Dunlap property for the Bard property and the purchase of the 125-acre Bard parcel, testified that decedent had told him that his interests in those properties were to be his sole and separate interests. Petitioner testified that she believed that she had a community interest in the New Mexico ranch and the successor properties,

yet she failed to list the New Mexico property in the financial statement filed with the divorce court during the course of the divorce proceeding she initiated.  Moreover, she did not object when decedent failed to list that property in the inventory of community property he filed with the divorce court.  Petitioner testified that she performed bookkeeping and other management services in connection with the operation of the partnership. That testimony does not lend support to her argument that the character of the New Mexico ranch and the successor properties was changed to community property.  The performance of services by one spouse will not, standing alone, effect a change in character of the other spouse's separate property.  Myrland v. Myrland, 508 P.2d at 763 (husband performed services for his wife's business, one of the assets of which was the wife's separately owned real property;  held, husband's performance of services did not change the character of the real property to community property);  Horton v. Horton, 278 P. 370, 371 (Ariz. 1929) (fact that husband helped construct a building on the wife's separately owned real estate does not transmute the building or the real estate into community property).

Based on the evidence before us, we are unable to conclude that decedent intended to, or did, change the character of his interest in the New Mexico property or any of the successor properties to community property.  Petitioner has failed to carry her burden of proving such a change.  We find as an ultimate fact

that the Bard property was decedent's separate property at the time of his death.

E.   Conclusion

The New Mexico ranch was decedent's separate property. Petitioner has not persuaded us that the character of either that property or the successor properties changed during decedent's lifetime.  Therefore, decedent's interest in the Bard property was decedent's separate property on the date of his death, and therefore the value of that property is includable in his gross estate.  Petitioner received a one-third interest in that property under the intestate succession laws of the State of California, and only the value of that one-third interest is deductible in computing the taxable estate.

Decision will be entered

under Rule 155.